EDUARDO G. ROY (Bar No. 146316)
JOHN R. HURLEY (Bar no. 203641)
PROMETHEUS PARTNERS L.L.P.
220 Montgomery Street Suite 1094
San Francisco, CA 94104
Telephone: 415.527.0255

Attorneys for Plaintiff
Michael Dietrick

# UNITED STATES DISTIRCT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL DIETRICK, individually and on behalf of all others similarly situated,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>SECURITAS SECURITY SERVICES USA, INC.,<br><br>　　　　　　　Defendant. | Case No.: 3:13-cv-5016<br><br>**COLLECITIVE AND CLASS ACTION COMPLAINT FOR:**<br><br>1. **OVERTIME WAGES AND OVERTIME RECORDS, 29 U.S.C. §§207(a) & (e), §211(c) and §215(a).**<br>2. **OVERTIME WAGES, CALIFORNIA LABOR CODE §§510 and 1198;**<br>3. **INACCURATE WAGE STATEMENTS, CALIFORNIA LABOR CODE §§226 and 1174;**<br>4. **WAITING TIME PENALTIES, CALIFORNIA LABOR CODE §203;**<br>5. **UNLAWFUL AND UNFAIR BUSINESS PRACTICES, CALIFORNIA BUS. & PROF. CODE §17200,** *et seq.*<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Michael Dietrick, individually and on behalf of all others similarly situated, complains and alleges by and through his attorneys, upon personal knowledge and information and belief, as follows:

## SUMMARY OF COMPLAINT

1. **Summary Introduction**: Defendant Securitas Security Services USA, Inc. ("Securitas"), is a division of the largest security firm in the world, with more than 90,000 security guards in its operations throughout the United States. Predictably, in order to maximize its profits, Securitas has attempted to control costs related to its wages and benefits provided to its employees. What could not be predicted is that Securitas would do so on the backs of its employees by engaging in unlawful practices designed to deny lawfully earned wages to its front-line security guards.

2. **Summary Statement of Facts**: Securitas has a long-standing, nationwide, written policy setting out a non-discretionary annual bonus program for its security guards based on the number of hours worked. Securitas did not include the non-discretionary annual bonus in overtime calculations. Instead, Securitas mislabeled this non-discretionary annual bonus program as a "vacation pay" policy in order to avoid adding the non-discretionary annual bonus in overtime calculations for more than 90,000 employees. The sham "vacation policy" has nothing to do with vacation pay. Under the sham policy:
   a. Security guards did not receive pay of any kind while on vacation;
   b. Security guards who did take a vacation during the year received nothing if they left before the annual payment was due; and,
   c. Security guards received a lump-sum annual payment based on pre-determined contractual provisions regarding total hours worked, even if they didn't take any vacation.

3. The sham "vacation pay" policy, stripped of its label, did provide the following:
   a.  The security guards had a contract right to a non-discretionary bonus based on years of service and number of hours worked in the preceding year;
   b.  The non-discretionary bonus was promised well in advance of the security guards receiving the bonus;

   c.  The amount of the bonus was calculated using a pre-determined formula set by Securitas; and,

   d.  After one-year of employment, full-time Contract Services Employees became eligible for the non-discretionary bonus if the employee was still employed by Securitas on the employee's anniversary date.

4. Securitas did not include the non-discretionary bonus of its employees "regular rate" for calculating overtime compensation.

5. **Summary Statement of Law**: Under the federal Fair Labor Standards Act, as well as state law, a non-discretionary bonus must be included in an employees "regular rate" for calculating overtime compensation. Under the FLSA, the "regular rate" of pay "at which an employee is employed shall be deemed to include **all** remuneration for employment paid to, or on behalf of, the employee," subject to certain enumerated exceptions. 29 U.S.C. § 207(e)(3). The non-discretionary bonuses promised by Securitas should have been included in the "regular rate" of its security guards pay when calculating overtime pay:

> Bonuses which are announced to employees to induce them to work more steadily or more rapidly or more efficiently or to remain with the firm are regarded as part of the regular rate of pay. Attendance bonuses, individual or group production bonuses, bonuses for quality and accuracy of work, bonuses contingent upon the employee's continuing in employment until the time the payment is to be made and the like are in this category. They must be included in the regular rate of pay.

29 C.F.R. § 778.211; *see also* DLSE Manual § 49.1.2.4(3) (incorporating 29 C.F.R. § 778.211).

6. **Summary Conclusion**: Securitas has failed to include the non-discretionary bonuses it paid in the "regular rate" of its security guards, resulting in systematic underpayment of overtime compensation.

7. Securitas avoided including the non-discretionary annual bonus in overtime calculations by mislabeling the program as a "vacation pay" policy. The program has nothing to do with vacation pay.

8. In substance, this purported "vacation policy" was a sham, in order to avoid adding the non-

3
COLLECTIVE AND CLASS ACTION COMPLAINT

discretionary annual bonus in overtime calculations for more than 90,000 employees. Pure and simple, the policy is a non-discretionary bonus program that should have been included in the security guards "regular rate." By mislabeling its program and failing to include bonus payments in overtime calculation, Securitas has underpaid more than 90,000 security guards nationwide, in order to enrich itself. As a result, Securitas underpaid Plaintiff and the putative Classes, and they have not received all wages due and owing.

**JURISDICTION AND VENUE**

9. This Court has personal and subject matter jurisdiction over all causes of action asserted herein.

10. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 as Plaintiff asserts causes of action arising under federal law. This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. §1367.

11. Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(1) and (d) as Securitas is a resident of this District. Securitas is registered to do business in the State of California and it has subjected itself to personal jurisdiction and venue by transacting business in the Northern District.

**PLAINTIFF**

12. Plaintiff Michael Dietrick ("Plaintiff" or "Dietrick") is a California resident and former employee of Securitas. Dietrick's employment with Securitas ended on or about July 31, 2013, as part of a mass layoff. At the time of the layoff, Plaintiff had worked for Securitas as a full-time security guard for several years.

**DEFENDANTS**

13. At all relevant times, Defendant Securitas Security Services USA, Inc. ("Securitas"), was and is a Delaware corporation registered and qualified to do business in California.

**GENERAL ALLEGATIONS**

14. At all relevant times and to the present, Securitas has had a nationwide, non-discretionary annual bonus program, which it operated under auspices of a sham "vacation pay" policy. This bonus program is embodied in a document titled Securitas USA Vacation Pay Plan (the "Vacation Pay Plan"). A true and correct copy of the Vacation Pay Plan is attached hereto as Exhibit 1 and is

incorporated as if fully set forth herein.

15. At all relevant times, the Vacation Pay Plan, as amended and restated, covered Securitas employees in California, Colorado, Illinois, Maine, Massachusetts and Nebraska.

16. At all relevant times, Securitas employees in other states were subject to identical or substantially similar policies and practices. As stated in the Vacation Pay Plan:

> Employees of the Company who are employed in locations other than [the enumerated states] … are eligible for vacation pay benefits under a separate, unfunded policy of the Company that provides benefits substantially similar to those provided under this Plan, which are paid from the general assets of the Company. The purpose of this arrangement is to ensure a uniform vacation pay policy for all employees of the Company in all states.

17. Under the terms of the Vacation Pay Plan, security guards (and other employees who rendered services under a contract between Securitas and a client) were categorized as "Contract Services Employees" (in contrast to "Administrative Employees"). Based on filed Annual IRS Forms 5500 for the years 2008 and 2009, there were approximately 23,000 to 25,000 employees covered by the Vacation Pay Plan in those years. Plaintiff is informed and believes that similar numbers of employees were covered by the Plan in subsequent years, and that the majority of such employees were "Contract Services Employees."

18. Based on statements on the Securitas website, Securitas has over 90,000 employees nationwide. Plaintiff is informed and believes that the majority of such employees are security guards covered by policies and practices identical or substantially similar to those in Vacation Pay Plan.

19. The Vacation Pay Plan provided that after one-year of employment, full-time Contract Services Employees became eligible for "vacation pay benefits." Pursuant to Schedule A of the Vacation Pay Plan, a Contract Services Employee received a base of 40 "Vacation Hours" with between 1 and 5 years of service, 80 "Vacation Hours" with between 5 and 10 years of service, and 120 "Vacation Hours" with at least 10 years of service.

20. Although the Vacation Pay Policy purported to provide "Vacation Hours" and "vacation pay benefits" to Contract Services Employees, Securitas did not actually provide these employees with paid vacations. Instead, the Vacation Pay Plan made a lump-sum bonus payment at the end of the year regardless of whether or not the individual took vacation:

>Payment of Vacation Pay. A Contract Services Employee shall not receive any pay during his vacation. Rather, all vacation pay benefits shall be paid annually in a lump sum as soon as possible following the Contract Services Employee's Anniversary Date.

21. In addition, the Vacation Pay Plan provided that the bonus was forfeited if a Contract Services Employee left employment with Securitas for any reason:

>Accrual of Benefits. A Contract Services Employee's right to receive benefits under the Plan shall accrue on his Anniversary Date. A Contract Services Employee who terminates employment for any reason, voluntarily or involuntarily, prior to his Anniversary Date shall not be entitled to any benefits under the Plan for the period of service since his last Anniversary Date, unless otherwise provided under the terms of the Client Contract.

22. One effect of these provisions was that if a Contract Service Employee took vacation but left Securitas between the vacation and the date of his or her employment anniversary, the individual did not receive any compensation in connection with the vacation taken.

23. Under the terms of the Vacation Pay Plan, the amount of the annual bonus was calculated by modifying the base amount of "Vacation Hours" by a fraction consisting of the employee's annual hours worked over 2080. For example, a Contract Services Employee with 2 years of service who worked 2200 hours in a year would receive a "vacation pay" bonus equivalent to 42.3 hours (2200 ÷ 2080 x 40 = 42.3), while another employee who worked 2000 hours would receive "vacation pay" equivalent to 38.5 hours (2000 ÷ 2080 x 40 = 38.5).

24. Under the terms of the program, Securitas had no discretion to deny payment to an employee who otherwise satisfied the conditions for receiving payment. In form and substance, the so-called "vacation pay benefits" were and are a non-discretionary bonus that must be included as part of the "regular rate" for determining compensation for overtime worked.

25. Plaintiff and the members of the Classes he seeks to represent received the non-discretionary bonus alleged herein and worked overtime while employed by Securitas, but Securitas did not include the "vacation pay benefits" in calculating their "regular rate." As a result, Securitas underpaid Plaintiff and the putative Classes, and they have not received all wages due and owing.

## COLLECTIVE AND CLASS ALLEGATIONS

26. Plaintiff alleges and asserts the claims for relief herein on his own behalf, and further seeks certification of this case as a collective action on behalf of similarly situated persons pursuant to 29 U.S.C. §216(b) for the violations of the Fair Labor Standards Act ("FLSA"), alleged herein.

27. Specifically, Plaintiff requests certification of this case as a collective action on behalf of the following Class of persons:

> All persons who, throughout the country during applicable statutes of limitations, are or were employed by Securitas Security Services USA, Inc., for at least one calendar year as Contract Service Employees as described in the Securitas USA Vacation Pay Plan and/or who are or were employed pursuant to substantially similar policies and practices.

28. This action is properly maintained as a collective action because the persons encompassed are or were subject to uniform policies and practices imposed by Securitas and are therefore similarly situated.

29. Plaintiff further asserts pendent state-law claims, and requests certification of the following Subclasses pursuant to Rule 23(b):

> **California Subclass A** – All persons who, during applicable statutes of limitations, are or were employed in California by Securitas Security Services USA, Inc., with at least one calendar year as Contract Service Employees as described in the Securitas USA Vacation Pay Plan and/or who transferred to California after at least one calendar year of employment.
>
> **California Subclass B** – All persons who, during applicable statutes of limitations, were formerly employed in California by Securitas Security Services USA, Inc., for at least one calendar year as Contract Service Employees as described in the Securitas USA Vacation Pay Plan and/or who transferred to California after at least one calendar year of employment.

30. Specifically excluded from each Subclass are counsel for Securitas, any Judge to whom this case is assigned, as well as their respective staffs and immediate families.

31. The claims for relief asserted herein satisfy the prerequisites for certification as a class action pursuant to Federal Rule of Civil Procedure 23(b)(3):

   a. There are questions of law or fact common to the class;

   b. The claims or defenses of the representative parties are typical of the claims or defenses of the class;

c. The representative parties will fairly and adequately protect the interests of the class;

d. The questions of law or fact common to class members predominate over any questions affecting only individual members; and

e. A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

32. <u>Numerosity</u>. The proposed class consists an unknown number of individuals likely numbering in the tens of thousands or more such that joinder of individual claims in a single action would be impracticable.

33. <u>Commonality</u>. Plaintiff's and class members' claims raise predominantly common factual and legal questions that can be answered for all class patients through a single class-wide proceeding. For example, to resolve any class member's claims, it will be necessary to answer the following factual and legal questions:

 a. Whether the sham "vacation pay" available to Plaintiff and the class members constituted a non-discretionary bonus that should have been included in the "regular rate" of pay for calculation of overtime pay;

 b. Whether Securitas failed to include the non-discretionary bonus available to Plaintiff and the class members in the "regular rate" of pay for calculation of overtime pay;

 c. Whether the wage statements Securitas provided to Plaintiff and the members of the proposed California Subclasses failed to accurately reflect the employees' gross or net wages as they failed to reflect the proper rate of overtime compensation owing;

 d. Whether Securitas knowingly and intentionally failed to provide timely, accurate, itemized wage statements to Plaintiff and the proposed California Subclasses;

 e. Whether Securitas violated Labor Code provisions including, but not limited to, §§ 226, 510, 1174, and 1198;

 f. Whether Securitas had policy of non-payment and forfeiture of accrued but unused vacation time upon termination of employment;

 g. Whether Securitas is liable for unpaid wages to Plaintiff and the Classes;

 h. Whether Securitas is liable for "waiting time" penalties pursuant to Labor Code §203

8
COLLECTIVE AND CLASS ACTION COMPLAINT

  payable to Plaintiff and the Classes;

 i. Whether Securitas violated California's Unfair Competition Law;

 j. Whether Securitas is liable for restitution payable to Plaintiff and the Classes pursuant to Bus. & Prof. Code §17203; and

 k. Whether Securitas should be enjoined from further unlawful and unfair conduct.

34. <u>Typicality</u>. Plaintiff's claims are typical of Class members' claims because each arises from a common course of conduct by Securitas.

35. <u>Adequacy</u>. Plaintiff will fairly and adequately protect the interests of the class. Plaintiff's interests do not conflict with class interests, and Plaintiff has retained counsel experienced in complex class action litigation to vigorously prosecute this action on behalf of the class.

36. <u>Predominance</u>. Common questions of law and fact predominate over any questions affecting only individual class members and a class action is superior to individual litigation.

37. <u>Superiority</u>. Under the facts and circumstances set forth above, class action proceedings are superior to any other methods available for both fair and efficient adjudication of the rights of each member of the class, because joinder of individual members of the class is not practical and, if the same were practical, said class members could not individually afford the litigation, such that an individual litigation would be inappropriately burdensome, not only to said citizens, but also the courts.

38. To process individual cases would both increase the expenses and cause delay not only to class members, but also to Defendants and the Court.

39. In contrast, a class action of this matter will avoid case management difficulties and provide multiple benefits to the litigating parties, including efficiency, economy of scale, unitary adjudication with consistent results, and equal protection of the rights of each Class member, all by way of the comprehensive and efficient supervision of the litigation by a single court.

40. Notice of the pendency of the action and of any result or resolution of the litigation can be provided to Class members by direct mail, the usual forms of publication, and/or such other methods of notice as deemed appropriate by the Court.

41. Without class certification, the prosecution of separate actions by individual members of the

Class described above would create a risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for defendants, and/or adjudications with respect to the individual members of the Class that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudication, or would substantially impair or impede their ability to protect their interest.

## FIRST CLAIM FOR RELIEF

### Violation of Fair Labor Standards Act

### By Plaintiff and All Members of the Collective Class Against Defendant Securitas

42. Plaintiff realleges and incorporates by reference all paragraphs set forth above.

43. At all relevant times, Defendant Securitas has been and continues to be an "employer" engaged in interstate commerce within the meaning of the 29 U.S.C. §203(d).

44. At all relevant times, Defendant Securitas employed Plaintiff and continues to employ putative Class members within the definition of the 29 U.S.C. §203(e)(1).

45. The named Plaintiff consents to sue in this action pursuant to Fair Labor Standards Act ("FLSA").

46. The FLSA requires each covered employer such as Defendant Securitas to compensate all non-exempt employees at a rate of not less than 1½ the "regular rate" of pay for work performed in excess of forty hours in a workweek.

47. Plaintiff and the class he seeks to represent were and are paid hourly and are not exempt from the right to receive overtime pay under the FLSA.

48. The FLSA further requires that, subject to specified exceptions, the "regular rate" of an employee for purposes of overtime calculation shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee.  Regulations promulgated under the FLSA expressly recognize that non-discretionary bonuses must be included as part of an employee's "regular rate." 29 U.S.C. § 207(e)(3); 29 C.F.R. § 778.211 (2011); *see also* DLSE Manual § 49.1.2.4(3) (incorporating 29 C.F.R. § 778.211).

49. Although Securitas has labeled the payments due Contract Services Employees under the Vacation Pay Plan as "vacation pay benefits," the payments were not paid on account of or in

connection with vacations or other periods in which employees are not working. The payments due were calculated mechanically without exercise of discretion, and were paid pursuant to a prior contract, agreement, or promise. In form and substance, the so-called "vacation pay benefits" were and are, in fact, a non-discretionary bonus that must be included as part of the "regular rate" for determining compensation for overtime worked by Contract Services Employees.

50. At all relevant times, Defendant Securitas had a policy and practice of failing to include the non-discretionary bonuses payable under the Vacation Pay Plan as part of the "regular rate" for determining compensation for overtime worked by Contract Services Employees.

51. As a result of this policy and practice, Defendant Securitas has violated and continues to violate the FLSA, 29 U.S.C. §§201 *et seq.*, including 29 U.S.C. §207(a) & (e).

52. As a result of this policy and practice, Plaintiff and the Class have been damaged in that they have not received al wages due and owing.

53. Defendant Securitas has failed to make, keep and preserve records with respect to Plaintiff and the class he seeks to represent, sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, 29 U.S.C. §§201 *et seq.*, including 29 U.S.C. §211(c) and §215(a).

54. The conduct of Defendant Securitas as alleged herein constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. §255(a).

55. Plaintiff on behalf of himself and the class that he seeks to represent is entitled to damages in the amount of the under-calculation of overtime compensation due to use of an improper "regular rate," plus liquidated damages as provided by the FLSA, 29 U.S.C. §216(b), and other such legal and equitable relief as the Court deems just and proper.

56. Plaintiff on behalf of himself and the class that he seeks to represent requests recovery of attorney's fees and costs associated with this cause as provided by 29 U.S.C. §216(b).

57. Wherefore Plaintiff prays for relief as set forth below.

## SECOND CLAIM FOR RELIEF

### Violation of California Labor Code §§510 and 1198

### By Plaintiff and the California A and B Subclasses

### Against Defendant Securitas

58. Plaintiff realleges and incorporates by reference all paragraphs set forth above.

59. At all relevant times, Defendant Securitas employed Plaintiff and members of the California Subclasses.

60. The California Labor Code requires that employers pay overtime at the rate of one and 1½ times the employee's "regular rate" of pay for all hours worked in excess of 8 up to and including 12 hours in any workday, and for the first 8 hours of work on the seventh consecutive day of work in a workweek, and double the employee's regular rate of pay for all hours worked in excess of 12 in any workday and for all hours worked in excess of 8 on the seventh consecutive day of work in a workweek.

61. Plaintiff and the subclasses he seeks to represent were and are paid hourly and are not exempt from the right to receive overtime pay under the California Labor Code.

62. California Labor Code § 200 defines wages as "...all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis or other method of calculation."

63. The California Industrial Welfare Commission has not defined the term "regular rate" of pay for purposes of the California Labor Code, but has instead adopted the definition of "regular rate" set out in the FLSA, 29 USC § 207(e), and regulations promulgated thereunder.

64. Although Securitas has labeled the payments due Contract Services Employees under the Vacation Pay Plan as "vacation pay benefits," the payments are not paid on account of or in connection with vacations or other periods in which employees are not working. The payments due are calculated mechanically without exercise of discretion, and are paid pursuant to a prior contract, agreement, or promise. In form and substance, the so-called "vacation pay benefits" are, in fact, a non-discretionary bonus that must be included as part of the "regular rate" for determining compensation for overtime worked by Contract Services Employees.

65. At all relevant times, Defendant Securitas had a policy and practice of failing to include the non-discretionary bonuses payable under the Vacation Pay Plan as part of the "regular rate" for determining compensation for overtime worked by Contract Services Employees.

66. As a result of this policy and practice, Defendant Securitas has violated and continues to violate the California Labor Code, including California Labor Code §§510 and 1198.

67. Plaintiff on behalf of himself and the class that he seeks to represent is entitled to damages in the amount of the under-calculation of overtime compensation due to use of an improper "regular rate," and other such legal and equitable relief as the Court deems just and proper.

68. Wherefore Plaintiff prays for relief as set forth below.

### THIRD CLAIM FOR RELIEF

### Violation of California Labor Code §§226 and 1174

### By Plaintiff and the California A and B Subclasses

### Against Defendant Securitas

69. Plaintiff realleges and incorporates by reference all paragraphs set forth above.

70. California Labor Code § 226(a) provides as follows:

> Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, . . . (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, . . .. The deductions made from payments of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement or a record of the deductions shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California.

71. California Labor Code § 226(e) provides that an employee suffering injury as a result of a knowing and intentional failure by an employer to comply with Labor Code § 226(a) is entitled to recover the greater of his or her actual damages or a penalty of $50 for the initial pay period which a violation occurs and $100 per employee for each violation in subsequent pay periods (up to a maximum of $4,000), in addition to attorneys' fees and costs.

72. The conduct alleged herein constitutes violations of California Labor Code §§ 226 and 1174, as

Defendant knowingly and intentionally failed to provide timely, accurate, itemized wage statements to Plaintiff and the proposed California Subclasses.

73. The wage statements Securitas provided to Plaintiff and the members of the proposed California Subclasses did not accurately reflect the employees' gross or net wages, as they failed to reflect the proper rate of overtime compensation owing due to the failure include the so-called "vacation pay benefits" as part of the "regular rate" for determining compensation for overtime worked by Contract Services Employees. As a result, Plaintiff and the Classes were damaged in that they could not determine whether or not they had been accurately paid.

74. Wherefore Plaintiff prays for relief as set forth below.

## FOURTH CLAIM FOR RELIEF

### Waiting Time Penalty

### By Plaintiff and the California B Subclass

### Against Defendant Securitas

75. Plaintiff incorporates and re-alleges all other paragraphs as if fully set forth herein.

76. California Labor Code §203 provides as follows:

> If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.

77. Plaintiff and members of the California B Subclass were employed by Securitas and were terminated or resigned from their positions but were not paid wages owed upon termination or within 72 hours of resignation, either due to failure pay all overtime compensation due and owing as a result of application of an improper "regular rate."

78. This non-payment was the direct and proximate result of uniform policies and practices imposed by Securitas, and constituted a willful refusal to pay wages due and owing to Plaintiff and the Subclasses.

79. Plaintiff and the Subclass Members are therefore entitled to recover "waiting time" penalties of up to thirty days' wages pursuant to Labor Code §203 in an amount to be established at trial

together with interest thereon.

80. Wherefore Plaintiff prays for relief as set forth below.

## FIFTH CLAIM FOR RELIEF

### Unfair Competition Law

### By Plaintiff and the California A and B Subclasses

### (Bus. & Prof. Code §17200, *et seq*.)

81. Plaintiff incorporates and re-alleges all other paragraphs as if fully set forth herein.

82. The conduct of Securitas alleged herein constitutes unlawful and unfair business practices in violation of the California Unfair Competition Law, Bus. & Prof. Code §17200, *et seq*., in that the violations of the FLSA, CFR, Labor Code and Wage Orders alleged herein also constitute unlawful and unfair business practices under the UCL.

83. Bus. & Prof. Code §17203 provides that the Court may restore to any person in interest any money or property which may have been acquired by means of such violative conduct. As a direct and proximate result of the conduct alleged herein acts, Plaintiff and the Classes were injured and suffered the loss of money in the amount of unpaid vacation pay that they were otherwise entitled to receive. Plaintiff and the Classes are therefore entitled to restitution for all wages unlawfully withheld from them as a result of the unlawful and unfair conduct of Securitas.

84. Plaintiff's success in this action will enforce important rights affecting the public interest. Plaintiffs and the Classes seek, and are entitled to, injunctive relief as well as all other appropriate equitable remedies. Injunctive relief is necessary and appropriate to prevent Securitas from continuing and repeating its unlawful and unfair business practices.

85. Wherefore Plaintiff prays for relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests of this Court the following relief, on behalf of himself and the proposed Classes:

    a. Designation of this action as a collective action on behalf of Plaintiff and the Class he seeks to represent pursuant to the FLSA claims and a prompt issuance of notice pursuant to 29 U.S.C. §216(b), to all similarly situated members of the FLSA opt-in class

apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual consent to sue forms pursuant to 29 U.S.C. §216(b) and equitable tolling of the statute of limitations from the date of filing this Complaint until the expiration of the deadline for filing consent to sue forms pursuant to 29 U.S.C. §216(b);

b. Back wages and liquidated damages pursuant to 29 U.S.C. §216(b);

c. Reasonable attorney's fees pursuant to 29 U.S.C. §216(b);

d. An order certifying the proposed Subclasses under Rule 23 and appointing Plaintiff and his counsel to represent the Class;

e. Appropriate injunctive relief and/or declaratory relief, including an order requiring Securitas to cease the conduct alleged herein;

f. Recovery of unpaid overtime pay in an amount to be proven at trial;

g. Waiting time penalties pursuant to Labor Code §203;

h. Statutory damages and attorney's fees pursuant to California Labor Code § 226(e);

i. Restitution in an amount to be proven at trial;

j. Establishment of a fluid recovery fund for payment of damages, penalties and/or restitution to Plaintiffs and the proposed Class and for *cy pres* payment of unclaimed funds. Attorneys' fees and costs of suit, including expert witness fees;

k. An award of statutory costs and interest, including prejudgment interest at the legal rate; and,

l. Such other and further relief as the Court may deem appropriate.

Neither this Prayer nor any other allegation or prayer in this Complaint is to be construed as a request, under any circumstance, that would constitute a request for attorneys' fees under California Labor Code §218.5.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all claims so triable.

DATED: October 28, 2013

Respectfully submitted,

PROMETHEUS PARTNERS L.L.P.

By: /S/ John R. Hurley
John R. Hurley
Attorneys for Plaintiff Michael Dietrick

## **EXHIBIT 1**