1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MICHAEL DIETRICK,

          Plaintiff,

    v.

SECURITAS SECURITY SERVICES USA,
INC.,

          Defendant.

Case No.  13-cv-05016-JST

**ORDER DENYING MOTION FOR
SUMMARY JUDGMENT**

Re: ECF No. 31

       In this action for claims of alleged violations of federal and California labor laws,
Defendant Securitas moves for summary judgment or, in the alternative, partial summary
judgment on all claims asserted in Plaintiff Michael Deatrick's[1] Amended Complaint.  For the
reasons set forth below, the motion is DENIED.

**I.      BACKGROUND**

    **A.      The Parties and Claims**

       Plaintiff Michael Deatrick is a former employee of Defendant Securitas Services USA, Inc.
("Securitas"), a national provider of security services.  Deatrick worked for Securitas as a security
guard for several years prior to being laid off.  Deatrick alleges that Securitas failed to pay him
and other security guards the full overtime compensation they were owed, because Securitas failed
to take into account in the overtime calculation the payments that security guards received in
connection with Securitas' "Vacation Pay Plan" ("the Plan").  Am. Compl. ¶¶ 1-6.  Deatrick
alleges that Securitas improperly treated these payments ("the payments at issue") as vacation
payments under the FLSA, even though such payments were, in practice, retention or productivity
bonuses.

---

[1] Plaintiff's name is misspelled in the complaint as "Dietrick."  The court refers to him here by the
correct spelling.

United States District Court
Northern District of California

1   Deatrick has asserted a claim under the Fair Labor Standards Act ("FLSA") for failure to

2   pay overtime wages against Securitas on his own behalf and on behalf of a putative class of

3   Securitas employees who were subject to the Plan.[2]   Additionally, Deatrick has asserted the

4   following claims under California law on his own behalf and on behalf of two putative classes of

5   Securitas employees who were employed by Securitas in California: (1) a claim for failure to pay

6   overtime wages in violation of California Labor Code sections 510 and 1198; (2) a claim for

7   inaccurate wage statements in violation of California Labor Code sections 226 and 1174; (3) a

8   claim for waiting time penalties under California Labor Code section 203 for failure to pay the

9   wages owed upon termination;  (4) a claim under California's Unfair Competition Law ("UCL");

10   and (5) a claim under California's Private Attorneys General Act.

11   **B.    Facts**

12   The Plan is set forth in the Security Officer Handbook given to security officers upon

13   being hired and each time it is updated.  Walsh Decl. ¶ 9 & Ex. T, U, V.  Security officers also

14   receive a summary of the Plan's Summary Plan Description.  Id. ¶ 10 & Ex. W.  The Plan's stated

15   purpose is to provide eligible employees with "funded vacation pay benefits."  Walsh Decl., Ex. A

16   at SUSA 0041.

17   Under the terms of the Plan, eligible "Contract Services Employees" do not receive any

18   pay while on vacation.[3]  The Plan provides that:

19

20   Payment of Vacation Pay. A Contract Services Employee *shall not receive any pay during his vacation*.  Rather, all vacation

21   pay benefits shall be paid annually in a lump sum as soon as possible following the Contract Services Employee's Anniversary Date.

22

23   [2] The putative class is defined as "[a]ll persons who, throughout the country during applicable

24   statutes of limitations, are or were employed by Securitas Security Services USA, Inc., for at least

25   one calendar year as Contract Service Employees as described in the Securitas USA Vacation Pay

26   Plan and/or who are or were employed pursuant to substantially similar policies and practices." Am. Compl. ¶ 27.

27   [3] A "Contract Service Employee" is defined as "any employee of an Employer designated in accordance with the Employer's standard employment practices as a security employee . . .

28   whether on a full-time or part-time basis[.]"  Walsh Decl., Ex. A § 2.7.

2

United States District Court
Northern District of California

Walsh Decl., Ex. A at SUSA 0042-45 (emphasis added); Walsh Decl. Ex. T at 2, Ex. U at 2, Ex. V at 2.

The payments that Deatrick and other employees received under the Plan on a yearly basis were calculated based on (1) years of service; (2) the number of hours worked in the immediately preceding year; and (3) the most frequent rate of pay during the year:

> Determination of Vacation Pay. Vacation pay shall be calculated with respect to the total hours paid to the [CAS] during the year ending in the month of the [CAS] Anniversary Date. The number of hours of vacation pay benefits to which such a [CAS] shall be entitled shall be the number of hours of vacation set forth on Schedule A based on the [CAS]'s Years of Service multiplied by a fraction, the numerator of which is the actual number of hours that the [CAS] was paid during the year and the denominator of which is 2080. A [CAS] whose actual hours paid during the year are less than 2080, but equal 1560 or more, shall be entitled to receive a pro rata portion of the benefits listed on Schedule A attached hereto. In determining his actual hours paid during the year, a [CAS] shall receive credit for . . . up to a maximum of 40 hours per week . . .

Walsh Decl. Ex. A at SUSA 0042-45; Walsh Decl. Ex. T at 2, Ex. U at 3, Ex. V at 3.

To be eligible for annual payments under the Plan, an employee must have worked at least 1560 hours in the preceding year. Walsh Decl. Ex. A at SUSA 0042-45. Payments were issued on the employee's anniversary date, unless the employment was terminated, in which case the employee did not receive any payments under the Plan for that year:

> Accrual of Benefits. A Contract Services Employee's right to receive benefits under the Plan shall accrue on his Anniversary Date. A Contract Services Employee who terminates employment for any reason, voluntarily or involuntarily, prior to his Anniversary Date shall not be entitled to any benefits under the Plan for the period of service since his last Anniversary Date[.]

Walsh Decl., Ex. A at 5; Walsh Decl., Ex. T at 2, Ex. U at 3, Ex. V at 3.

These terms could vary depending on the existence of a client contract or a collective bargaining agreement. Walsh Decl., Ex. T at SUSA 0297; Walsh Decl., Ex. U at SUSA 000301; Walsh Decl., Ex. V at SUSA 000304.

Securitas admits that it excluded payments under the Plan from its overtime calculations.

3

1   Answer  ¶ 65.  Deatrick received payments under the Plan from 2009 to 2012.  Kaczke Decl. ¶ 2 &

2   Ex. X.

3          The Plan provides that it "is intended to qualify as an employee welfare benefit plan within

4   the meaning of Section 3(1) of [ERISA]."  Walsh Decl., Ex. A at SUSA 0041.   Benefits payable

5   under the Plan are funded by Securita's Voluntary Employee Beneficiary Association Trust

6   ("VEBA Trust").  Walsh Decl. ¶ 5; Walsh Decl., Ex. A § 2.18, 5.1.  Securitas is required to make

7   contributions to the VEBA Trust so that benefits "will be paid from amounts set aside in the Trust

8   rather than from the general assets of [Securitas]."  Walsh Decl., Ex. A § 2.18, 5.1.  A Plan

9   Administrator supervises the execution of the Plan.  Id. § 6.1.  To comply with ERISA's

10  requirements, Securitas has filed required IRS forms and conducted requisite audits.  Walsh Decl.

11  ¶ 4 & Ex. B-E.

12  **II.     LEGAL STANDARD**

13         Summary judgment is proper when a "movant shows that there is no genuine dispute as to

14  any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

15  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by"

16  citing to depositions, documents, affidavits, or other materials.  Fed. R. Civ. P. 56(c)(1)(A).  A

17  party also may show that such materials "do not establish the absence or presence of a genuine

18  dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R.

19  Civ. P. 56(c)(1)(B).  An issue is "genuine" only if there is sufficient evidence for a reasonable

20  fact-finder to find for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–

21  49 (1986).  A fact is "material" if the fact may affect the outcome of the case.  Id. at 248.  "In

22  considering a motion for summary judgment, the court may not weigh the evidence or make

23  credibility determinations, and is required to draw all inferences in a light most favorable to the

24  non-moving party."  Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir.1997).

25         Where the party moving for summary judgment would bear the burden of proof at trial,

26  that party bears the initial burden of producing evidence that would entitle it to a directed verdict if

27  uncontroverted at trial.  See C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc., 213 F.3d 474,

28  480 (9th Cir. 2000).  Where the party moving for summary judgment would not bear the burden of

United States District Court
Northern District of California

4

proof at trial, that party bears the initial burden of either producing evidence that negates an essential element of the non-moving party's claim, or showing that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial.  If the moving party satisfies its initial burden of production, then the nonmoving party must produce admissible evidence to show that a genuine issue of material fact exists.  See Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102–03 (9th Cir. 2000).

The non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment."  Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996).  Indeed, it is not the duty of the district court to "to scour the record in search of a genuine issue of triable fact."  Id.  "A mere scintilla of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some significant probative evidence tending to support the complaint."  Summers v. Teichert & Son, Inc., 127 F.3d 1150, 1152 (9th Cir. 1997) (citation and internal quotation marks omitted).  If the non-moving party fails to make this showing, the moving party is entitled to summary judgment.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

## III.   DISCUSSION

Securitas moves for summary judgment, or, in the alternative, for partial summary judgment on all of the claims asserted in the complaint.   First, Securitas contends that Deatrick's FLSA claim fails as a matter of law because the payments at issue fall within the vacation pay exemption to the FLSA's overtime calculation.   Second, Securitas argues that all of Deatrick's claims for violations of California's labor laws also fail because they are preempted by ERISA, as the payments at issue are paid out of an ERISA trust and not out of Securita's general funds. Finally, Securitas argues that, to the extent that Deatrick's state claims are not preempted by ERISA, it is entitled to partial summary judgment on the issues of willfulness and intent in connection with these claims.

Deatrick opposes the motion, arguing that the "vacation" payments at issue are actually retention and productivity bonuses, not vacation pay, and therefore must be a part of the overtime calculation under the FLSA.   Deatrick also argues that the payments at issue are not governed by

United States District Court
Northern District of California

1    ERISA because they do not constitute vacation pay.  Finally, Deatrick contends that discovery is

2    incomplete as to the issues willfulness and intent, and therefore, the entry of summary judgment

3    on these issues would be improper at this juncture.

4          The court addresses each of these issues in turn.

5          **A.    FLSA Claim**

6          The FLSA requires employers to pay their non-exempt employees overtime for hours

7    worked in excess of forty hours in a workweek at a rate that is at least one-and-a-half times the

8    employee's "regular rate."[4]  29 U.S.C. § 207(a)(1).  The "regular rate" must account for "all

9    remuneration," which includes compensation that is "not directly attributable to any particular

10   hours of work."  29 U.S.C. § 207(e); 29 C.F.R. § 778.224.   Eight types of compensation are

11   excluded from the regular rate calculation, one of which involves:

12              *payments made for occasional periods when no work is performed*
              *due to vacation,* holiday, illness, failure of the employer to provide
13            sufficient work, or other similar cause; reasonable payments for
              traveling expenses, or other expenses, incurred by an employee in
14            the furtherance of his employer's interests and properly
              reimbursable by the employer; and other similar payments to an
15            employee which are not made as compensation for his hours of
              employment[.]
16

17   29 U.S.C. § 207(e)(2) (emphasis added).

18         The employer bears the burden to show that a particular exemption applies.  Idaho Sheet

19   Metal Workers, Inc., v. Wirtz, 383 U.S. 190, 206 (1996) (holding that the employer has the burden

20   of proving that compensation falls within an exemption to the regular rate).  Importantly, the Ninth

21   Circuit has held that the exemptions to the FLSA must be "narrowly construed."  Cleveland v.

22   City of Los Angeles, 420 F.3d 981, 988 (9th Cir. 2005) ("The FLSA is construed liberally in favor

23   of employees; exemptions are to be narrowly construed against the employers seeking to assert

24   them[.]") (citation and internal quotation marks omitted).  In determining whether a payment falls

25

26   _____

27   [4] "The purpose of FLSA overtime is to compensate those who labored in excess of the statutory
     maximum number of hours for the wear and tear of extra work and to spread employment through
28   inducing employers to shorten hours because of the pressure of extra cost."  Bay Ridge Operating
     Co. v. Aaron, 334 U.S. 446, 460 (1948).

United States District Court
Northern District of California

within an exemption, the court must look to the character of the payment, not its label.  See Walling v. Harnischfeger Corp., 325 U.S. 427, 430 (1945) (holding that determination of what constitutes "regular rate" under the FLSA, courts must "look not to contract nomenclature but to the actual payments").

Here, both parties agree that the material facts pertaining to the terms of the Plan and to the payments made under the Plan are undisputed.  As such, Securita's motion with respect to this claim is limited to the question of whether it is entitled to judgment as a matter of law on the ground that the payments at issue fall within one of the exemptions to the regular rate calculation, namely § 207(e)(2), which covers vacation pay.

The court concludes that Securitas cannot meet its burden to show that the payments at issue fall within this exemption in light of the plain language of § 207(e)(2), the regulations interpreting § 207(e)(2), and the few available opinions on this issue.

First, the payments contemplated by the plain language of § 207(e)(2) are limited to those made "for occasional periods when no work is performed due to vacation."  The payments at issue were not made based on vacation periods when no work was performed.  Rather, they were made based on (1) the employee's years of service; (2) the number of hours worked in the immediately preceding year; and (3) the employee's most frequent rate of pay during the year. Indeed, the payments at issue were completely blind as to whether an employee actually took vacation time.

Second, the regulations promulgated by the Department of Labor ("DOL"), which interpret the scope of § 207(e)(2), provide that:

> *Payments which are made for occasional periods when the employee is not at work due to vacation*, holiday, illness, failure of the employer to provide sufficient work, or other similar cause, where the payments are in amounts approximately equivalent to the employee's normal earnings for a similar period of time, *are not made as compensation for his hours of employment.* Therefore, *such payments may be excluded from the regular rate of pay under section 7(e)(2) of the Act* and, for the same reason, no part of such payments may be credited toward overtime compensation due under the Act.

United States District Court
Northern District of California

7

1   29 C.F.R. § 778.218(a) (emphasis added).[5]

2           Like the plain language of § 207(e)(2), this regulation also ties the payments that fall

3   within the § 207(e)(2) exemption to payments for time that is spent *not* working "due to vacation,"

4   and it specifies that such payments are exempted precisely because they are "not made as

5   compensation for [ ] hours of employment."  Unlike these exempted payments, the payments at

6   issue here have no connection to time spent *not* working "due to" vacation, but they do have a

7   direct relationship to the time that an employee worked.  Indeed, one of the factors used to

8   determine the payment amount is the number of hours that the employee worked in the preceding

9   year.

10          Third, the few opinions addressing the applicability of the § 207(e)(2) exemption support

11  the notion that payments based on hours worked and that have no connection to idle time, like the

12  payments at issue here, do not fall within the scope of § 207(e)(2).  See Local 246 Util. Workers

13  Union of Am. v. S. California Edison Co., 83 F.3d 292, 295 (9th Cir. 1996) (holding that

14  supplemental disability payments do not fall within § 207(e)(2) because "[t]he payments

15  necessarily compensate for hours of employment because they supplement a regular wage paid for

16  work performed."); Hart v. City of Alameda, C-07-5845MMC, 2009 WL 1705612, at *2-3 (N.D.

17  Cal. June 17, 2009) (holding that payments for holidays that had no connection to time spent not

18  working during holidays does not fall within § 207(e)(2) because payments were connected

19  instead to the amount of time an employee had worked during a given year).  By contrast,

20  payments that constitute "an additional benefit for employees and not compensation for hours

21  worked" *do* fall within the scope of § 207(e)(2).  See Ballaris v. Wacker Siltronic Corp., 370 F.3d

22  901, 909 (9th Cir. 2004) (holding that payments for lunch periods fall within the § 207(e)(2)

23  exemption because employees did not work during the lunch period).

24          Of the opinions addressing the § 207(e)(2) exemption, Hart is the most instructive.  2009

25  WL 1705612, at *2-3.  There, police officers were paid "additional compensation for holidays,"

26

27  ─────────────────
    [5] DOL regulations are entitled to "great deference."  See Imada v. City of Hercules, 138 F.3d

28  1294, 1297 (9th Cir. 1998) ("Regulations are entitled to great deference and are presumed valid
    unless shown to be erroneously in conflict with the underlying law.").

United States District Court
Northern District of California

and these payments were made regularly "regardless of whether or not the police officer[s] work[ed] the holiday." <u>Id.</u> at *1.  The question before the court was whether these payments fell within the § 207(e)(2) exemption and were thus excluded from the regular rate calculation.  The court held that the payments did not fall within the exception.  In light of the language of § 207(e)(2), the court reasoned that the payments could fall within the exemption only if they were "due to" a holiday.  The court held that the payments were not "due to" a holiday because "the payments at issue represent[ed] the total value of a year's holidays, which total is, in essence, spread out over the course of that year, rather than paid in the period in which any given holiday occurs."[6]  <u>Id.</u>  For that reason, "depending on the particular dates of his employment, such employee may be either under- or overcompensated for the holidays occurring during the time of his employment."  <u>Id.</u> at *2.  The court's analysis focused on the practical effect of the payments in question, rather than on their label, and it implicitly concluded that a meaningful connection must exist between the payments at issue and non-work time in order for the payments to fall within the exemption.

Securitas argues that <u>Hart</u> is inapposite to because "comparing vacation pay to holiday pay is like comparing apples to oranges." ECF No. 33 [at 7].  The court is not persuaded by this

---

[6] The court in <u>Hart</u> provided the following hypotheticals to illustrate its reasoning: "For example, assuming there are thirteen holidays per year recognized by the City, each with a value of $100, the total value of the year's holidays would be $1300; if there are twenty-six pay periods per year, the Additional Compensation received each pay period would be $50. Thus, an employee who works the full year would, under the City's theory, be entitled to a total of $1300 "due to" the thirteen holidays that occurred during his employment, and, over the course of the year, he would in fact receive precisely $1300 in Additional Compensation.  An employee who begins his employment in October and works through December, however, assuming one holiday in October (Columbus Day), two in November (Veterans' Day and Thanksgiving), and one in December (Christmas), would, under the City's theory, be entitled to a total of $400 for the value of the holidays that occurred during his employment, yet he would in fact receive only $300 in Additional Compensation over the six pay periods during which he worked. Conversely, an employee who works only the months of March through May, assuming no holidays in March or April and one in May (Memorial Day), would, under the City's theory, be entitled to only $100 but, like the employee who works from October through December, would receive $300 in Additional Compensation. Under such circumstances, the Court is not persuaded that any of the Additional Compensation payments constitutes a payment made "due to" a holiday."  Hart, 2009 WL 1705612, at *3.

United States District Court
Northern District of California

argument. The "due to" test employed by the court in <u>Hart</u> comes directly from the language §

207(e)(2). Section 207(e)(2) applies to both holiday pay and vacation pay. As such, the "due to"

test is directly relevant and applicable to the question before the court, namely whether the

"vacation" payments at issue here fall within the scope of § 207(e)(2). Under this test, the

payments at issue are not covered by § 207(e)(2), because they are not "due to" vacation. As

discussed above, despite their label, the payments have no meaningful connection to when or if

employees took vacation; they are based instead on hours worked and on whether the employee

made it to his employment anniversary. Accordingly, the payments here are analogous to the ones

in <u>Hart</u>: they are labeled as if they pertain to one of the categories of non-work time covered by §

207(e)(2), but they have no meaningful connection to the type of non-work time they purportedly

are meant to compensate.

Securitas also contends that the payments at issue are akin to buy-backs of unused vacation

time. Under the applicable DOL regulations, buy-backs fall within the scope of § 207(e)(2)

because "they are not regarded as compensation for working." 29 C.F.R. § 778.219(a). The

problem with this argument is that the regulations that govern buy-backs apply only where the

employee is "entitled" to a "paid idle holiday or paid vacation." <u>Id.</u> Here, the express terms of

the Plan make clear that Securita's employees are not "entitled" to paid vacation within the

meaning of 29 C.F.R. § 778.219(a); indeed, any vacation that the employees take is unpaid. As

discussed above, the payments at issue are based on the number of hours and the total number of

years the employees worked, not on idle time. Accordingly, all of the authorities cited by

Securitas that pertain to vacation buy-backs are inapposite. <u>See</u> Mot. at 9-11 (citing <u>Lemiux v.</u>

<u>City of Holyoke</u>, 740 F. Supp. 2d 246, 254 (D. Mass. 2010) (holding that "vacation buy-back

payments are excluded under section 207(e)(2)"); <u>Chavez v. City of Albuquerque</u>, 630 F.3d 1300,

1309-10 (10th Cir. 2011) (holding that vacation buy-backs are exempted from the regular rate)).[7]

---

[7] In <u>Chavez</u>, the court addressed the question of whether compensation provided by the City of
Albuquerque to its employees for unused vacation and sick time (i.e., buy-backs) should be
included in determinations of the regular rate under the FLSA. In analyzing this issue, the court
considered "whether vacation and sick leave buy-backs are more analogous to payments for
'periods when no work is performed due to vacation . . . [or] illness,' or attendance bonuses." <u>Id</u>.

Finally, Securitas argues that the payments at issue fall within § 207(e)(2) because it intended such payments to be vacation payments.[8]  This argument fails in light of <u>Walling v. Youngerman-Reynolds Hardwood Co.</u>, 325 U.S. 419, 424 (1945), which holds that the substance of the benefits at issue, as opposed to the label that is attached to them, governs the FLSA overtime calculation analysis.  <u>Id.</u> (holding that determination of what constitutes "regular rate" under the FLSA, courts must "look not to contract nomenclature but to the actual payments").

The court concludes that, based on their substance, the payments at issue are non-discretionary bonuses, which must be factored into the regular rate calculation:

> <u>Promised bonuses not excluded</u>. The bonus, to be excluded under section 7(e)(3)(a), must not be paid "pursuant to any prior contract, agreement, or promise." For example, any bonus which is promised to employees upon hiring or which is the result of collective bargaining would not be excluded from the regular rate under this provision of the Act. *Bonuses which are announced to employees to induce them to work more steadily or more rapidly or more efficiently or to remain with the firm are regarded as part of the regular rate of pay.*  Attendance bonuses, individual or group production bonuses, bonuses for quality and accuracy of work, *bonuses contingent upon the employee's continuing in employment until the time the payment is to be made and the like are in this category.* They must be included in the regular rate of pay.

29 C.F.R. § 778.211(c) (emphasis added).

The payments at issue constitute non-discretionary bonuses under 29 C.F.R. § 778.211(c) because they incentivize employees to continue their employment with Securitas until the anniversary date, which is when the payment is made.

In light of the foregoing, Securita's motion is DENIED as to this claim.

---

at 1308 (citation omitted).  The court held that sick leave buy-backs should be included in the regular rate but that vacation buy-backs should not, because the former are compensation for additional service or value received by the employer, and are analogous to attendance bonuses," whereas the latter "are analogous to holiday work premiums or bonuses for working particular undesirable days." <u>Id</u>. at 1304, 09-10.

[8] Securitas contends that it treats the payments at issue as vacation pay because it separates these payments from other bonuses that employees may receive and because it does not permit employees to receive "double vacation pay" when an employee is eligible to receive vacation benefits through a vehicle other than the Plan.

**B.     ERISA Preemption of State-law Claims**

Congress passed ERISA to "safeguard employees from the abuse and mismanagement of funds that had been accumulated to finance various types of employee benefits." <u>Massachusetts v. Morash</u>, 490 U.S. 107, 112-13 (1989).  To accomplish this purpose, ERISA "sets forth reporting and disclosure obligations for plans, imposes a fiduciary standard of care for plan administrators, and establishes schedules for the vesting and accrual of pension benefits." <u>Id.</u> at 113.

In addition to covering "employee pension benefit plans," ERISA covers "employee welfare benefit plans," which the statute defines as:

> [A]ny plan, fund, or program which was . . .  maintained by an employer . . . for the purpose of providing for its participants or their beneficiaries . . . medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, *or vacation benefits*, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services . . .

29 U.S.C. § 1002(1) (emphasis added).

"The Act does not further define 'plan, fund, or program' or 'vacation benefits' and does not specify whether every policy to provide vacation benefits falls within its ambit." <u>Morash</u>, 490 U.S. at 114.

Securitas contends that the Plan is an employment welfare benefit plan covered by ERISA because the Plan's "vacation benefits" are paid out of a separate fund.  Securitas concedes that "vacation benefits" are not defined in the statute, but it nevertheless contends that the Plan provides the type of "vacation benefits" contemplated by ERISA on the ground that the Plan complies with certain administrative, funding, and reporting requirements applicable to ERISA welfare funds.[9]  Specifically, Securitas contends that the payments at issue are paid out of the VEBA Trust, which exists primarily to cover potential liabilities resulting from the benefits at issue, and that the liability of this Trust is determined by an independent auditor.  Securitas also notes that it has made certain filings with the IRS and conducted required ERISA audits.  Securitas relies on <u>Khan v. Securitas Security Services USA, Inc.</u>, Case No. 2:13-cv-08338 (C.D. Cal. Feb.

---

[9] These requirements include setting up an independent trust to pay the benefits at issue that is funded by the employer's contributions.

United States District Court
Northern District of California

11, 2014) to show that its compliance with certain ERISA requirements brings the Plan within the scope of ERISA.

The court concludes that Securitas has not met its burden to show that the payments at issue are welfare benefits under ERISA.  Securitas' arguments assume that the Plan falls within the category of "vacation benefits," but that assumption is far from established.  The determination of whether a plan is of a type described in or contemplated by the plain language of 29 U.S.C. § 1002(1) is a threshold one.  If a benefits plan is not of a type described in or contemplated by 29 U.S.C. § 1002(1), then it is irrelevant whether that plan complies with ERISA's administrative, funding, and reporting requirements.  To hold otherwise would lead to the conclusion that payments of any kind can be subject to ERISA so long such payments are made by an independent trust set up and funded by the employer and the employer complies with other ERISA administrative and reporting requirements.

Unfortunately, no court has defined "vacation benefits," and none of the cases cited by Securitas are helpful, because in each of those cases, the question of whether a plan was covered by ERISA as a vacation benefits plan was not addressed.[10]

Nevertheless, the Supreme Court provided useful guidance on this issue in Massachusetts v. Morash, 490 U.S. 107, 114 (1989).  There, the court examined the scope of "vacation benefits," not in isolation, "but in light of the words that accompany it and give the provision meaning."  Id. The court noted that ERISA's welfare benefits provision, § 1002(1), covers "plans to provide medical, sickness, accident, disability, and death benefits, training programs, day care centers, scholarship funds, and legal services," and it recognized that "[t]he *distinguishing feature of most of these benefits is that they accumulate over a period of time and are payable only upon the occurrence of a contingency outside of the control of the employee*."  Id. at 115-16 (emphasis

---

[10] This includes Khan v. Securitas Security Services USA, Inc., case no. 2:13-cv-08338 (C.D. Cal. Feb. 11, 2014).  There, the court held that the Plan satisfied ERISA's funding, reporting, and administrative requirements, but it did not address the question of whether the Plan constitutes a "vacation benefits" welfare plan within the meaning of 29 U.S.C. § 1002(1).  That is because the parties in that case asserted claims that depended on characterizing the payments in question as "vacation pay."  See Shavit Decl., Ex. Y at 6, ECF No. 31-27.

United States District Court
Northern District of California

1 added).  In light of this recognition, the Court noted that the vacation payments covered by ERISA

2 "should be understood to include within the scope of ERISA those vacation benefit funds,

3 analogous to other welfare benefits, in which either the employee's right to a benefit is contingent

4 upon some future occurrence or the employee bears a risk different from his ordinary employment

5 risk."[11]  Id. at 116.

6      Here, the court has already concluded that the payments at issue are not connected in any

7 way to the taking of vacation by security guards.  Instead, these payments are based on the hours

8 that security guards worked during the prior year and on whether they continued their employment

9 with Securitas through their anniversary.  As such, the payments are de facto retention bonuses

10 designed to incentivize employees to stay with Securitas for whole years at a time.  Because the

11 payments are not "payable only upon the occurrence of a contingency outside of the control of the

12 employee" like the welfare plans contemplated by § 1002(1), the court cannot conclude that the

13 payments are "vacation benefits" covered by ERISA.[12]

14      Accordingly, Securita's motion is DENIED as to this claim.[13]

15     **C.**    **State-law Claims**

16      Securitas moved for partial summary judgment on issues of willfulness and intent in

17 connection with Deatrick's state-law claims.

18

---

19 [11] Ultimately, the issue decided in Morash was whether a plan that all parties agreed provided
20 vacation benefits constituted a welfare benefits plan under ERISA.  The Court held that it did not,
because the plan's benefits were not paid out of an independent trust.  In other words, the
21 threshold issue of whether the plan was a "vacation benefits" plan was undisputed, and the only
issues addressed by the Court were those pertaining to the plan's compliance with ERISA's
22 administrative requirements.

23 [12] Securitas' reliance on Alaska Airlines, Inc. v. Oregon Bureau of Labor, 122 F.3d 812, 813 (9th
24 Cir. 1997) is misplaced.  Unlike the payments at issue here, the benefits in that case fell squarely
within the description of welfare benefits in Morash — in other words, they were "payable only
25 upon the occurrence of a contingency outside of the control of the employee" — because they
were payments "in the event of sickness."  Id.  The case also is distinguishable for another reason,
26 namely that no party disputed that the benefits in question constituted employee welfare benefits
within the meaning of ERISA.

27

28 [13] Because the court concludes that the Plan is not covered by ERISA, it does not address the
question of whether Deatrick's state-law claims "relate to" the Plan.

1    After Deatrick requested more time in his opposition to conduct discovery on these issues,

2    Securitas agreed that Deatrick could have an additional 120 days to complete this discovery in the

3    event that Securitas' summary judgment motion were denied as to the FLSA and ERISA issues.

4    In light of the parties' agreement that additional discovery is necessary on willfulness and

5    intent, Securita's motion is DENIED AS MOOT with respect to this claim.

6    ## IV.   CONCLUSION

7    This case brings to mind an aphorism frequently attributed to Abraham Lincoln, who once

8    was asked how many legs a horse[14] would have, provided that one called its tail a leg. "Four,"

9    Lincoln replied, "because calling a tail a leg doesn't make it one."  Robert DeWitt, Old Abe's

10   Joker 54 (1863); Henry Clay Whitney, Life On The Circuit With Lincoln 177 (1940).  Similarly,

11   the court here concludes that Securitas' calling its annual payments "vacation pay" is not sufficient

12   for those payments to earn the title.

13   Securitas' motion for summary judgment is DENIED in its entirety.

14   **IT IS SO ORDERED.**

15   Dated:  June 23, 2014

16                                     _____
                                          JON S. TIGAR
17                                        United States District Judge

18

19

20

21

22

23

24

25

26

27   _____

28   [14] In its various iterations, the conversation has been retold as involving a horse, a dog, a sheep, and a calf.

United States District Court
Northern District of California

15