UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL DEATRICK,<br><br>    Plaintiff,<br><br>    v.<br><br>SECURITAS SECURITY SERVICES USA, INC.,<br><br>    Defendant. | Case No. 13-cv-05016-JST<br><br>**ORDER GRANTING MOTION FOR CONDITIONAL CLASS CERTIFICATION AND DENYING MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**<br><br>Re: ECF No. 152 |

Before the Court is an unopposed Motion for Conditional Class Certification and Preliminary Approval of Settlement, filed by Plaintiff. ECF No. 152. For the reasons stated below, conditional class certification is granted, and preliminary approval of the settlement is denied.

## I.  BACKGROUND

### A.  The Parties and Claims

Named Plaintiff Michael Deatrick represents a class of individuals who are current and former employes of Defendant Securitas Services USA, Inc. ("Securitas"), a national provider of security services. Deatrick worked for Securitas as a security guard for several years prior to being laid off. Plaintiffs allege that Securitas failed to pay Deatrick and other security guards the full overtime compensation they were owed, because Securitas failed to take into account in the overtime calculation the payments that security guards received in connection with Securitas' "Vacation Pay Plan" ("the Plan"). Third Am. Compl. ("TAC"), ECF No. 129, ¶¶ 8-16. Plaintiffs allege that Securitas improperly treated these payments as vacation payments under the FLSA, even though such payments were, in practice, retention or productivity bonuses.

The TAC asserts a claim under the Fair Labor Standards Act ("FLSA") for failure to pay

overtime wages against Securitas on his own behalf and on behalf of a putative class of Securitas employees who were subject to the Plan.  Additionally, it asserts the following claims: (1) a claim for failure to pay overtime wages in violation of California Labor Code sections 510 and 1198; (2) a claim for inaccurate wage statements in violation of California Labor Code sections 226 and 1174; (3) a claim for waiting time penalties under California Labor Code section 203 for failure to pay the wages owed upon termination; (4) a claim under California's Unfair Competition Law ("UCL"); (5) violation of overtime and wage premium laws in eight other states besides California; and (6) a claim under California's Private Attorneys General Act.  TAC, ¶¶ 46-105.

The Plaintiffs' claims revolve around Securitas's policy for vacation pay.  See Order Denying Motion for Summary Judgment ("Summary Judgment Order"), ECF No. 38 at 2-4 (also describing factual background of Plaintiffs' claims).  Under the terms of the Plan, employees do not receive pay while on vacation, but rather receive their vacation pay benefits in an annual lump sum:

> Payment of Vacation Pay. A Contract Services Employee *shall not receive any pay during his vacation*. Rather, all vacation pay benefits shall be paid annually in a lump sum as soon as possible following the Contract Services Employee's Anniversary Date.

Id. at 2-3 (quoting ECF No. 31, Walsh Decl., Ex. A at SUSA 0042-45 (emphasis added); ECF No. 31, Walsh Decl. Ex. T at 2, Ex. U at 2, Ex. V at 2).  The payments that Deatrick and other employees received under the Plan on a yearly basis were calculated based on (1) years of service; (2) the number of hours worked in the immediately preceding year; and (3) the most frequent rate of pay during the year.  Id. at 3.  To be eligible for annual payments under the Plan, an employee must have worked at least 1560 hours in the preceding year.  Id. (quoting ECF No. 31, Walsh Decl. Ex. A at SUSA 0042-45).

One result of this, Plaintiffs assert, is that if an employee ends his employment before his anniversary date for any reason (including termination by the employer), he will not receive his vacation benefits for that year.  Id. at 3; TAC, ¶ 15-16.  Moreover, because it considered the annual lump sum to be a bonus, Securitas did not include the vacation pay in its assessment of employees' "regular rates" for calculation of overtime.  TAC, ¶¶ 27-30.

**B.     Procedural Background**

On May 9, 2014, Securitas filed a Motion for Summary Judgment or in the alternative, for Partial Summary Judgment, ECF No. 31, which was denied by the Court on June 23, 2014, ECF No. 38. In their motion, Securitas advanced three arguments:

> First, Securitas contends that Deatrick's FLSA claim fails as a matter of law because the payments at issue fall within the vacation pay exemption to the FLSA's overtime calculation. Second, Securitas argues that all of Deatrick's claims for violations of California's labor laws also fail because they are preempted by ERISA, as the payments at issue are paid out of an ERISA trust and not out of Securita's general funds. Finally, Securitas argues that, to the extent that Deatrick's state claims are not preempted by ERISA, it is entitled to partial summary judgment on the issues of willfulness and intent in connection with these claims.

Id. at 5. The Court denied summary judgment on all three issues. Id. at 15.

Deatrick filed a motion for conditional class certification on July 24, 2014, ECF No. 45. On November 4, 2014, the Court certified the following FLSA class:

> All persons throughout the United States, including its territories and possessions:
> 1. who are or were security employees of Securitas Security Services USA, Inc.;
> 2. who received annual lump-sum vacation pay upon an anniversary of employment since October 28, 2010; and
> 3. who were required to be employed on their anniversaries of employment to receive vacation pay.
> Attorneys for the parties, any Judge to whom this case is assigned, and their respective staffs and immediate families are excluded from the class.

ECF No. 65 at 2. It also approved the proposed notices and consent forms and ordered them distributed to the putative class. Id. at 3. The currently operative complaint, the Third Amended Complaint, was filed on May 20, 2015. See TAC, ECF No. 134.

The parties now inform us that the total number of opt-in plaintiffs in the case is currently 24,281. Motion for Conditional Class Certification and Preliminary Approval of Settlement ("Motion"), ECF No. 152 at 4. Plaintiffs request preliminary approval of a class settlement reached by the parties, which will be discussed further below. In addition, they request conditional certification of an additional California opt-out class defined as:

> All individuals currently and formerly employed by Defendant who: (i) were employed in California as security employees at any time between October 28, 2009 and the date the Court grants preliminary approval of this Settlement; (ii) received annual lump-sum vacation pay upon an anniversary of employment since October 28, 2009; and (iii) who were

3

> required to be employed on their anniversaries of employment to receive vacation pay. Counsel for Securitas, the Judge to whom this case is assigned, as well as their respective staffs and immediate families are specifically excluded from the class.

Motion, ECF No. 152 at 14. Defendant submitted a statement of non-opposition. ECF No. 153.

## II.   CLASS CERTIFICATION

### A.   Legal Standard

Class certification under Rule 23 of the Federal Rules of Civil Procedure is a two-step process. First, a plaintiff must demonstrate that the four requirements of Rule 23(a) are met: numerosity, commonality, typicality, and adequacy. "Class certification is proper only if the trial court has concluded, after a 'rigorous analysis,' that Rule 23(a) has been satisfied." Wang v. Chinese Daily News, Inc., 709 F.3d 829, 833 (9th Cir. 2013) (quoting Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011)).

Second, a plaintiff must establish that the action meets one of the bases for certification in Rule 23(b). Here, because they rely on Rule 23(b)(3), Plaintiffs must establish that "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . [that] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The party seeking class certification bears the burden of demonstrating by a preponderance of the evidence that all four requirements of Rule 23(a) and at least one of the three requirements under Rule 23(b) are met. See Wal-Mart, 131 S. Ct. at 2551.

### B.   Proposed Class

In addition to the FLSA nationwide class that the Court previously certified, Plaintiffs request that the Court provisionally certify a second California class for the purpose of settlement. They define the class as follows:

> All individuals currently and formerly employed by Defendant who: (i) were employed in California as security employees at any time between October 28, 2009 and the date the Court grants preliminary approval of this Settlement; (ii) received annual lump-sum vacation pay upon an anniversary of employment since October 28, 2009; and (iii) who were required to be employed on their anniversaries of employment to receive vacation pay. Counsel for Securitas, the Judge to whom this case is assigned, as well as their respective staffs and immediate families are specifically excluded from the class.

4

Motion, ECF No. 152 at 14.  Unlike the FLSA class, which was opt-in, the proposed class will be opt-out.  Id. at 11.

### C. Analysis

For the reasons set forth below, the Court grants the request to provisionally certify the California class for settlement purposes.

#### 1. Rule 23(a)(1): Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  Here, Plaintiffs state that that the proposed class would include at least 11,000 people, as well as those who did not opt-in to the FLSA class and reside in California.  Joinder of thousands of individuals would be impracticable.

In addition, while not enumerated in Rule 23, "courts have recognized that 'in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable.'"  Vietnam Veterans of Am. v. C.I.A., 288 F.R.D. 192, 211 (N.D. Cal. 2012) (quoting DeBremaecker v. Short, 433 F.2d 733, 734 (5th Cir. 1970)).  In this case, the proposed class consists of employees of the Defendant company who were employed during a specified period of time and received vacation pay according to Plaintiffs' definition.  The Court finds the proposed class is adequately defined and ascertainable.

#### 2. Rule 23(a)(2): Commonality

A Rule 23 class is certifiable only if "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  For the purposes of Rule 23(a)(2), "even a single common question" is sufficient.  Wal-Mart, 131 S. Ct. at 2556 (quotations and internal alterations omitted).  The common contention, however, "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  Id. at 2551.

As Plaintiffs explain, all members of the proposed class share the common question of whether the lump-sum vacation pay provided by Securitas "actually constitutes a non-discretionary bonus that should have been included in the 'regular rate' of pay for calculation of

1  overtime pay." Motion, ECF No. 152 at 16.  This is the dominant legal question in the case and
2  satisfies the commonality requirement.

### 3. Rule 23(a)(3): Typicality

In certifying a class, courts must find that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" Id. (quoting Schwartz v. Harp, 108 F.R.D. 279, 282 (C.D. Cal. 1985)).

Plaintiff Deatrick is a California resident and former California employee of Securitas. TAC, ¶ 4. Plaintiffs argue that his claims are "substantially identical to the claims of absent Class Members" and that "the claims rise and fall under the same factual circumstances and legal theories." Motion, ECF No. 152 at 16. Deatrick's and the proposed class's claims both rely on the same policies of Securitas. This satisfies the typicality requirement.

### 4. Rule 23(a)(4): Adequacy

"The adequacy of representation requirement . . . requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 462 (9th Cir. 2000).

No party has suggested, and the Court has not found, any evidence in the record suggesting that Deatrick has any conflict of interest with the other class members. Deatrick shares common claims with the class, seeks the same relief as they do, and bases his claims the same underlying facts. Further, Plaintiffs' counsel have submitted several declarations highlighting their experience in their careers litigating wage and hour class action litigation. See ECF No. 152, Ex. 2-3. The Court concludes that Deatrick and his counsel will adequately represent the proposed class.

### 5. Rule 23(b)(3): Predominance and Superiority

To certify a Rule 23 damages class, the Court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . [that] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997). "'When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis.'" Hanlon v. Chrysler Corp., 150 F.3d 1011, 1022 (9th Cir. 1998) (quotation omitted).

Here, the dominant legal issue is how to interpret Securitas's vacation pay policy. The various questions that surround this issue predominate over any questions that could affect only individual class members. A class action is also a superior method for fairly and efficiently adjudicating those and other questions. The class consists of thousands of members who would be unlikely to bring individual claims for the small amounts of money they are each due. Even if this were not so, resolving their disputes in a single class action would be far more efficient than on an individual level. The Court concludes that the proposed class satisfies the requirements of Rule 23(b)(3).

Accordingly, the Court finds that provisional certification of the proposed California opt-out class is appropriate for the purposes of this settlement.

### III. PRELIMINARY APPROVAL

#### A. Legal Standard

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992). Courts generally employ a two-step process in evaluating a class action settlement. First, courts make a "preliminary determination" concerning the merits of the settlement and, if the class action has settled prior to class certification, the propriety of certifying the class. See Manual for Complex

Litigation, Fourth ("MCL, 4th") § 21.632 (FJC 2004). "The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." City of Seattle, 955 F.2d at 1276. Courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 947 (9th Cir. 2011).

The Court's task at the preliminary approval stage is to determine whether the settlement falls "within the range of possible approval." In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (quotation omitted); see also MCL, 4th § 21.632 (explaining that courts "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing."). Second, courts must hold a hearing pursuant to Rule 23(e)(2) to make a final determination of whether the settlement is "fair, reasonable, and adequate."

Preliminary approval of a settlement is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." In re Tableware, 484 F. Supp. 2d at 1079 (quotation omitted). The proposed settlement need not be ideal, but it must be fair and free of collusion, consistent with counsel's fiduciary obligations to the class. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1027 (9th Cir. 1998) ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion."). To assess a settlement proposal, courts must balance a number of factors:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the state of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

1  Id. at 1026 (citations omitted).  The proposed settlement must be "taken as a whole, rather than the
2  individual component parts" in the examination for overall fairness.  Id.  Courts do not have the
3  ability to "delete, modify, or substitute certain provisions"; the settlement "must stand or fall in its
4  entirety."  Id.

### B. Terms of the Settlement

The proposed settlement provides for a total payment of $2,500,000 by Securitas.  Motion, ECF No. 152 at 10.  The parties divide this amount approximately as follows:

- $1,300,000:  Settlement award to both classes
- $135,000:  Notice and settlement administration
- $10,000:  PAGA Penalty
    - $7,500 to state of California
    - $2,500 to affected employees
- $12,000:  Plaintiff's incentive award
- $1,043,000:  Attorney's fees and costs
    - $210,000:  Cost of notice for FLSA collective action
    - $50,000:  Damages experts
    - $35,000:  Discovery, mediation, and other litigation costs
    - $748,000:  Attorney's fees

Id. at 11.  The settlement is non-reversionary, and unclaimed funds will be paid to the unclaimed property funds of California and the states in which opt-in plaintiffs last resided.  Id. at 10.  Individual damages for each person will be based on each year in which he or she received a lump sum of vacation pay within the applicable statutory period.  Id. at 12.  For employees in California, that period is October 28, 2009 through December 31, 2015.  For employees outside of California, that period is October 28, 2010 through December 31, 2015.  Id.  Damages for each year will be determined by: "(1) dividing the amount of vacation pay received in the year by total hours worked in the year, (2) multiplying this quotient by .5 time the number of regular overtime hours worked in the year, and (3) adding the quotient multiplied by the number of double-time hours worked in the year."  Id.

9

Members of the previously certified opt-in FLSA class will not need to submit any additional paperwork to receive a settlement payment. Members of the opt-out class will need to return a claim form in order to receive an award. Id. They will have thirty days to submit a form or opt out. Id. at 21-22. Individualized notices of the settlement will be sent to mailing addresses to be provided from Securitas's employment records. Id. at 21. If notices are returned as undeliverable, the settlement administrator will "take reasonable steps" to locate those class members. Checks will remain negotiable for 180 days. Id. at 12.

In exchange, class members will release "all disputes and claims arising from or related to facts alleged in the Action and which are based on facts, events and/or actions during the Class Period. These include all claims that have been or could have been made, including claims not known or suspected to exist, against Defendant under federal, state or local law or regulation . . . arising during the Class Period, arising out of allegations that Defendant mislabeled annual nondiscretionary bonuses paid to security guards as vacation pay and, as a result, failed to include the payment in the regular rate of pay for purposes of calculating overtime or other premium pay." In addition, they will also release "derivative claims arising from the alleged failure to properly calculate overtime or other premium pay, including (but not limited to) claims that Defendant failed to provide accurate pay statements, that Defendant failed to pay all wages when due and/or on termination, and claims made under the California Private Attorneys General Act (PAGA), whether in an individual or representative capacity." ECF No. 152, Ex. 6 ("Stipulation of Settlement") at ¶ 22.

**C.  Analysis**

The Court denies the motion for preliminary approval based on two deficiencies with the proposed notice procedure and claim form procedure, which are discussed further below. Setting these aside for the moment, the Court concludes that the amount proposed to be awarded to the class falls "within the range of possible approval." Plaintiffs submit a declaration stating that the "average value of actual underpaid overtime wages for the full possible statutory period" for each class member is $78, while the average pretax payment for class members under the settlement would be approximately $44. Hurley Decl., ECF No. 152, Ex. 3, ¶ 12. Meanwhile, their motion

notes several risks associated with pursuing further litigation on the claims, such as that Securitas will be able to establish a defense of good faith, as well as Defendant's motion to enforce class action waivers and arbitration clauses against many of the class members. Motion, ECF No. 152 at 20.

The Court will evaluate the final requests for attorneys' fees and incentive awards at the final approval hearing. Currently, Plaintiffs request attorney's fees of $748,000, or approximately 29.9% of the total settlement award, which is within the range of possible approval. The parties have also proposed an incentive award of $12,000 for the named plaintiff Deatrick, which the Court notes is approximately 270 times the size of the stated average award for other class members. The Court is unlikely to approve an incentive award that is so disproportionate to other class members' recovery in the absence of extraordinary circumstances. See Staton v. Boeing Co., 327 F.3d 938, 975 (9th Cir. 2003). However, the Court will wait to complete this analysis until the final approval stage.

### 1.     Notice Procedure

As noted above, the parties propose providing notice of settlement through first class mail to addresses provided by Securitas. The parties also state that "reasonable steps" will be taken if notices are returned as undeliverable.

A statement that "reasonable" steps will be taken to ensure delivery lacks enough specificity for the Court to determine whether the notice process is sufficient. Instead, the parties should agree upon and describe the specific efforts that will be undertaken for notices returned as undeliverable. For example, another court in this circuit has approved a settlement plan that states the settlement administrator will "use[] the best available address by using the National Change of Address database or the equivalent to obtain forwarding addresses prior to mailing and using appropriate skip tracing to maximize the probability that the Notice and Claim Forms will be received by all Class members via U.S. Mail." Misra v. Decision One Mortgage Co., No. SA CV-07-0994 DOC, 2009 WL 4581276, at *9 (C.D. Cal. Apr. 13, 2009). In the absence of a more specific plan, the Court cannot approve the proposed notice procedure.

### 2.     Claim Form Procedure

11

Plaintiffs explain that members of the opt-in FLSA class will not need to submit any additional paperwork to receive their share of the settlement payment. However, they state that members of the opt-out California class would need to submit a claim form. Motion, ECF No. 152 at 12. Members would have 30 days to submit their claim. Id. at 21. The claim form asks only for a signature and also includes an option to submit a different address than the one to which the settlement notice will be mailed. ECF No. 152, Ex. 8 ("Claim Form").

This procedure is not "fair, reasonable, or adequate." Plaintiffs do not explain why they require a claim form for the opt-out class when they do not have any such requirement for the opt-in class. Presumably, it would be easier (and less costly) to implement a single administrative procedure for both classes, and no reason is given for the different treatment.

More importantly, the parties neglect to consider the effect of requiring a claim form for an opt-out class. The proposed class notice states that those class members who "do nothing" will remain bound by the settlement agreement but will receive no compensation in exchange for waiving their rights. ECF No. 152, Ex. 7 ("Notice") at 2. Yet experience teaches that this is precisely what the majority of the class will do – nothing. See Sylvester v. CIGNA Corp., 369 F. Supp. 2d 34, 52 (D. Me. 2005) (stating that "claims-made settlements regularly yield response rates of 10 percent or less). Class members who decline to opt out are signaling their agreement to be part of the settlement class and to be bound by the settlement agreement. All else being equal, they should receive their share of the award. Yet as it is currently structured, the settlement makes it possible, and even probable, that the majority of the class will not receive any money.

Nor it is clear why Plaintiffs believe a claims form is even necessary. As the parties have noted, Securitas is the current and former employer of all members of the class, and it has their mailing addresses. The parties have also set out the method by which class members' awards will be determined and presumably already have the information they need to calculate each member's share. Perhaps this is why the proposed claim form is nothing more than a request for a signature, with no need to submit any other personal information. These facts do not suggest that claim forms are necessary to the administration of the settlement. See Stewart v. USA Tank Sales and Erection Co, Inc., No. 12-05136-CV-SW-DGK, 2014 WL 836212 at *7 (W.D. Mo. March 3,

2014) ("Since the class members are all current or recent employees of USA Tank Sales, Defendant will have a name, recent address, and social security number for each class member. With this information, a settlement check can be mailed directly to each Rule 23 class member, which will ensure maximum participation in the settlement.").

Accordingly, the Court concludes that the claim form requirement puts unnecessary impediments in the path of plaintiffs receiving their due compensation for their injuries under the proposed settlement. Future proposals should endeavor to avoid these impediments.

## CONCLUSION

The motion for conditional certification of a class is granted. The motion for preliminary approval of settlement is denied.

**IT IS SO ORDERED.**

Dated: February 24, 2016

	JON S. TIGAR
	United States District Judge

13