UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL DEATRICK,<br><br>               Plaintiff,<br><br>       v.<br><br>SECURITAS SECURITY SERVICES USA,<br>INC.,<br><br>               Defendant. | Case No.  13-cv-05016-JST<br><br>**ORDER GRANTING MOTION FOR<br>FINAL APPROVAL OF CLASS<br>ACTION SETTLEMENT AND<br>GRANTING MOTION FOR<br>ATTORNEYS' FEES, COSTS AND<br>INCENTIVE AWARD**<br><br>Re: ECF Nos. 168, 169 |

Before the Court are Plaintiff's Motion for Final Approval of Class Action Settlement, ECF No. 168, and Motion for Attorneys' Fees, Costs and Incentive Award, ECF No. 169.  The Court previously granted a motion for preliminary approval of the settlement, ECF No. 161, and held a fairness hearing on September 22, 2016.  The Court will grant both motions.

# I.      BACKGROUND

## A.      The Parties and Claims

Named Plaintiff Michael Deatrick represents a class of individuals who are current and former employees of Defendant Securitas Services USA, Inc. ("Securitas"), a national provider of security services.  Deatrick worked for Securitas as a security guard for several years before he was laid off.  Plaintiff alleges that Securitas failed to pay Deatrick and other security guards the full overtime compensation they were owed, because Securitas failed to take into account in the overtime calculation the payments that security guards received in connection with Securitas's "Vacation Pay Plan" ("the Plan").  Third Am. Compl. ("TAC"), ECF No. 134, ¶¶ 8-16.  Plaintiff alleges that Securitas improperly treated these payments as vacation payments under the Fair Labor Standards Act ("FLSA"), even though such payments were, in practice, retention or productivity bonuses.

The TAC asserts a claim under the FLSA for failure to pay overtime wages against Securitas on his own behalf and on behalf of a putative class of Securitas employees who were subject to the Plan.  Additionally, it asserts the following claims: (1) a claim for failure to pay overtime wages in violation of California Labor Code sections 510 and 1198; (2) a claim for inaccurate wage statements in violation of California Labor Code sections 226 and 1174; (3) a claim for waiting time penalties under California Labor Code section 203 for failure to pay the wages owed upon termination; (4) a claim under California's Unfair Competition Law ("UCL"); (5) violation of overtime and wage premium laws in eight other states besides California; and (6) a claim under California's Private Attorneys General Act.  TAC, ¶¶ 46-105.

Plaintiff's claims revolve around Securitas's policy for vacation pay.  See Order Denying Motion for Summary Judgment ("Summary Judgment Order"), ECF No. 38 at 2-4 (also describing factual background of Plaintiff's claims).  Under the terms of the Plan, employees do not receive pay while on vacation, but rather receive their vacation pay benefits in an annual lump sum:

> Payment of Vacation Pay. A Contract Services Employee *shall not receive any pay during his vacation*. Rather, all vacation pay benefits shall be paid annually in a lump sum as soon as possible following the Contract Services Employee's Anniversary Date.

Id. at 2-3 (quoting ECF No. 31, Walsh Decl., Ex. A at SUSA 0042-45 (emphasis added); ECF No. 31, Walsh Decl. Ex. T at 2, Ex. U at 2, Ex. V at 2).  The payments that Deatrick and other employees received under the Plan on a yearly basis were calculated based on (1) years of service; (2) the number of hours worked in the immediately preceding year; and (3) the most frequent rate of pay during the year.  Id. at 3.  To be eligible for annual payments under the Plan, an employee must have worked at least 1560 hours in the preceding year.  Id. (quoting ECF No. 31, Walsh Decl. Ex. A at SUSA 0042-45).

One result of this, Plaintiff asserts, is that if an employee ends his employment before his anniversary date for any reason (including termination by the employer), he will not receive his vacation benefits for that year.  Id. at 3; TAC, ¶ 15-16.  Moreover, because it considered the annual lump sum to be a bonus, Securitas did not include the vacation pay in its assessment of employees' "regular rates" for calculation of overtime.  TAC, ¶¶ 27-30.

United States District Court
Northern District of California

**B.    Procedural Background**

On May 9, 2014, Securitas filed a Motion for Summary Judgment or in the alternative, for

Partial Summary Judgment, ECF No. 31, which the Court denied on June 23, 2014, ECF No. 38.

In its motion, Securitas advanced three arguments:

> First, Securitas contends that Deatrick's FLSA claim fails as a matter of law
> because the payments at issue fall within the vacation pay exemption to the FLSA's
> overtime calculation. Second, Securitas argues that all of Deatrick's claims for
> violations of California's labor laws also fail because they are preempted by
> ERISA, as the payments at issue are paid out of an ERISA trust and not out of
> Securita's general funds. Finally, Securitas argues that, to the extent that Deatrick's
> state claims are not preempted by ERISA, it is entitled to partial summary
> judgment on the issues of willfulness and intent in connection with these claims.

Id. at 5.  The Court denied summary judgment on all three issues.  Id. at 15.

Deatrick filed a motion for conditional class certification on July 24, 2014, ECF No. 45.

On November 4, 2014, the Court certified the following FLSA class:

> All persons throughout the United States, including its territories and possessions:
>     1. who are or were security employees of Securitas Security Services USA,
> Inc.;
>     2. who received annual lump-sum vacation pay upon an anniversary of
> employment since October 28, 2010; and
>     3. who were required to be employed on their anniversaries of employment
> to receive vacation pay.

ECF No. 65 at 2.  It also approved the proposed notices and consent forms and ordered them

distributed to the putative class.  Id. at 3.  The currently operative complaint, the TAC, was filed

on May 20, 2015. See TAC, ECF No. 134.  Plaintiff now states that the FLSA class, as identified

by the class list generated for notice procedures, consists of 24,081 members.

On November 9, 2015, Plaintiff moved for preliminary approval of a class settlement

reached by the parties, and for conditional certification of an additional California opt-out class

defined as:

> All individuals currently and formerly employed by Defendant who: (i) were
> employed in California as security employees at any time between October 28,
> 2009 and the date the Court grants preliminary approval of this Settlement; (ii)
> received annual lump-sum vacation pay upon an anniversary of employment since
> October 28, 2009; and (iii) who were required to be employed on their
> anniversaries of employment to receive vacation pay. Counsel for Securitas, the
> Judge to whom this case is assigned, as well as their respective staffs and
> immediate families are specifically excluded from the class.

ECF No. 152 at 14.  Defendant submitted a statement of non-opposition.  ECF No. 153.  Plaintiff

3

now states that this class, as identified by the class list, consists of 12,011 members.

On February 24, 2016, the Court granted the motion for conditional class certification but denied the motion for preliminary approval.  ECF No. 155.  The Court noted two deficiencies in the proposed settlement:  (1) insufficient explanation of the "reasonable steps" to be taken if settlement notices are returned as undeliverable; and (2) a separate claims form procedure for the California class, with no explanation why such a procedure was necessary.  Id. at 11-13.

On March 8, 2016, Plaintiff filed a Motion for Preliminary Approval of Amended Settlement and Modification of End-Date Settlement Class.  ECF No. 156.  The motion further explained the "reasonable steps" to be taken in the event a notice was returned as undeliverable and removed the separate claims form procedure for the California class, as well as added a small increase to the settlement amount and a proposed modification of the definition of the conditionally certified class.  Id.  Defendant submitted a statement of non-opposition on March 16, 2016.  ECF No. 159.  The Court granted the motion for preliminary approval and modifications on April 7, 2016.  ECF No. 161.

### C.    Terms of the Agreement

The proposed settlement provides for a total payment of $2,550,000 by Securitas.  Motion, ECF No. 156 at 11.  The parties propose to divide the settlement amount approximately as follows:

- o  $1,385,000:    Settlement award to both classes
- o  $125,000:       Notice and settlement administration
- o  $10,000:        PAGA Penalty
  - ▪  $7,500 to State of California
  - ▪  $2,500 to affected employees
- o  $5,000:         Plaintiff's incentive award
- o  $1,025,000:    Attorney's fees and costs
  - ▪  $210,000:     Cost of notice for FLSA collective action
  - ▪  $50,000:      Damages experts
  - ▪  $35,000:      Discovery, mediation, and other litigation costs

1    ▪ $730,000:     Attorney's fees

2    Id. at 11.  The settlement is non-reversionary, and unclaimed funds will be paid to the

3    unclaimed property funds of California and the states in which opt-in class members last resided.

4    Id. at 10.  Individual damages for each person will be based on each year in which he or she

5    received a lump sum of vacation pay within the applicable statutory period.  Id. at 12.  For

6    employees in California, that period is October 28, 2009 through December 31, 2015.  For

7    employees outside of California, that period is October 28, 2010 through December 31, 2015.  Id.

8    Damages for each year will be determined by: "(1) dividing the amount of vacation pay received

9    in the year by total hours worked in the year, (2) multiplying this quotient by .5 time the number

10   of regular overtime hours worked in the year, and (3) adding the quotient multiplied by the

11   number of double-time hours worked in the year."  Id.

12           In exchange, class members will release "all disputes and claims arising from or related to

13   facts alleged in the Action and which are based on facts, events and/or actions during the Class

14   Period.  These include all claims that have been or could have been made, including claims not

15   known or suspected to exist, against Defendant under federal, state or local law or regulation . . .

16   arising during the Class Period, arising out of allegations that Defendant mislabeled annual

17   nondiscretionary bonuses paid to security guards as vacation pay and, as a result, failed to include

18   the payment in the regular rate of pay for purposes of calculating overtime or other premium pay."

19   In addition, they will also release "derivative claims arising from the alleged failure to properly

20   calculate overtime or other premium pay, including (but not limited to) claims that Defendant

21   failed to provide accurate pay statements, that Defendant failed to pay all wages when due and/or

22   on termination, and claims made under the California Private Attorneys General Act (PAGA),

23   whether in an individual or representative capacity."  ECF No. 156-1 ("Amended Joint Stipulation

24   and Settlement of Class Action Claims") at ¶ 21.

25           **D.      Jurisdiction**

26           This Court possesses federal question jurisdiction over this matter pursuant to 28 U.S.C. §

27   1331, and supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. §

28   1367.

United States District Court
Northern District of California

## II.     FINAL APPROVAL OF THE SETTLEMENT

### A.  Legal Standard

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e).  "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1025 (9th Cir. 1998).  In addition, Rule 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." Id. at 1026.  In order to assess a settlement proposal, the district court must balance a number of factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004).[1]

Settlements that occur before formal class certification also require a higher standard of fairness. In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000).  In reviewing such settlements, in addition to considering the above factors, the court also must ensure that "the settlement is not the product of collusion among the negotiating parties." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 946–47 (9th Cir. 2011).

### B.     Analysis

In line with its previous order granting preliminary approval, the Court now concludes that the proposed settlement is fair, adequate and reasonable.

#### 1.     Adequacy of Notice

"The class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted).

The Court has previously approved the parties' proposed notice procedures for both

---

[1] There is no governmental participant in this case, so the Court need not consider this factor.

1    classes.  ECF No. 161.  In their motion for final approval, the parties state that they have carried

2    out this notice plan.  This included preparing the class list, which consisted of 12,011 members for

3    the California class, and 24,081 members of the FLSA class, mailing notice to the class members

4    via First Class mail using information provided by Securitas, and performed address traces and re-

5    mailings for those notices that were returned as undeliverable.  ECF No. 168 at 10.  The settlement

6    administrator, Rust Consulting Inc., has provided a declaration stating the same.  ECF No. 168-3.

7    The parties state that after completing this process, 767 notices remained undeliverable to class

8    members.  ECF No. 168 at 11.

9         In light of these actions, and the Court's prior order granting preliminary approval, the

10   Court finds the parties have sufficiently provided notice to the settlement class members.  See

11   Lundell v. Dell, Inc., Case No. 05–3970 JWRS, 2006 WL 3507938, at *1 (N.D. Cal. Dec. 5, 2006)

12   (holding that notice sent via email and first class mail constituted the "best practicable notice" and

13   satisfied due process requirements).

14            **2.       Fairness, Adequacy, and Reasonableness**

15                 **a.       Strength of Plaintiff's Case and Risk of Continuing Litigation**

16        Approval of a class settlement is appropriate when "there are significant barriers plaintiffs

17   must overcome in making their case."  Chun–Hoon v. McKee Foods Corp., 716 F. Supp. 2d 848,

18   851 (N.D. Cal. 2010).  Similarly, difficulties and risks in litigating weigh in favor of approving a

19   class settlement.  See Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 966 (9th Cir. 2009).

20        As the parties have previously argued on preliminary approval, there are a number of

21   dangers to Plaintiff obtaining relief for the class members in the absence of settlement.  These

22   include that Securitas may be able to evade a finding of willfulness or that it will be able to

23   establish a good faith defense, ECF No. 152 at 20, and that Securitas could successfully enforce

24   class action waivers and arbitration clauses that would prevent a large portion of the class from

25   obtaining recovery, id.  These risks are significant, in that they could prevent many class members

26   from obtaining any relief from Securitas altogether.  Accordingly, the Court concludes this factor

27   weighs in favor of approving the settlement.

28        These issues, along with class certification and trial itself, would likely lead to extensive

United States District Court
Northern District of California

7

and complex proceedings on top of the already protracted litigation so far. As the parties note, this settlement was reached after "over two years of investigation and discovery, significant motion practice, a day of mediation and subsequent settlement discussions." ECF No. 156 at 17. Moreover, the case has been pending before this Court since the filing of the initial complaint on October 28, 2013. ECF No. 1. The Court concludes that this factor weighs in favor of approval.

### b.   Settlement Amount

"In assessing the consideration obtained by the class members in a class action settlement, 'it is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." Nat'l Rural Telecomms. Cooperative v. DIRECTV, Inc., 221 F.R.D. 523, 527 (C.D. Cal. 2004) (quoting Officers for Justice v. Civil Service Comm'n of the City and Cnty. of San Francisco, 688 F.2d 615, 628 (9th Cir. 1982)). "In this regard, it is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial. Id. (citing Linney v. Cellular Alaska Partnership, 151 F.3d 1234, 1242 (9th Cir. 1998)).

In this case, the Court has already preliminarily approved the proposed settlement amount. It noted that Plaintiff, according to his supporting declaration, would provide an average pretax payment to class members of approximately $44, while the average value that class members were actually underpaid was approximately $78. ECF No. 155 at 10; see also Hurley Decl., ECF No. 152-3 ¶ 12. While Plaintiff does not provide comparative settlement recoveries in similar cases, the Court concludes this amount is fair and reasonable. In light of the significant risks to litigation outlined above, a recovery of approximately 56% of the average class member's loss is a good result. This factor weighs in favor of approval.

### c.   Extent of Discovery

"In the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement." In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000) (citation omitted).

Here, Plaintiff has stated in his supporting declarations that the parties engaged in

"extensive discovery," including "multiple rounds of written discovery, discovery motion practice, depositions of members of the Securitas benefits committee, review of thousands of pages of documents, and damages analysis based on payroll records for approximately 17,000 Securitas employees."  Hurley Decl., ECF No. 152-3 ¶ 8.  As the parties note, they filed and presented a discovery dispute before a Magistrate Judge in late 2014.  See ECF Nos. 54, 58.

The Court finds the parties conducted sufficient discovery to make an informed decision regarding the settlement's adequacy.  See In re Omnivision, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2007) (finding the parties were sufficiently informed about the case prior to settling because they engaged in discovery, took depositions, briefed motions, and participated in mediation).  This factor therefore weighs in favor of approval.

### d.    Counsel's Experience

Plaintiff's counsel have recommended approval of the settlement.  ECF No. 152 at 19. "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." In re Omnivision, 559 F. Supp. 2d at 1043 (citation omitted).[2]  Declarations submitted by two of Plaintiff's counsel, Eduardo G. Roy and John R. Hurley, indicate that together the two of them have over 40 years of experience practicing law and that both attorneys have spent much of this time focusing on consumer and employment class actions.  See ECF Nos. 152-2, 152-3.  The Court concludes this factor weighs in favor of approval.

### e.    Reaction of the Class

Finally, class members' positive reaction to a settlement weighs in favor of settlement approval.  "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."  In re Omnivision, 559 F. Supp. 2d at 1043 (citation omitted).

Here, just three out of the 24,281 FLSA class members opted to withdraw their consent to join, or approximately 0.01%.  ECF No. 168 at 8.  Out of 12,011 California class members,

---

[2] The Court considers this factor but gives it little weight.  "Although a court might give weight to the fact that counsel for the class or the defendant favors the settlement, the court should keep in mind that the lawyers who negotiated the settlement will rarely offer anything less than a strong, favorable endorsement."  Principles of the Law of Aggregate Litigation § 3.05 comment a (2010).

United States District Court
Northern District of California

United States District Court
Northern District of California

sixteen submitted requests for exclusion, or approximately 0.1%.  Id. at 11.  No class members

have objected to the settlement – one class member filed an objection on August 22, 2016, but he

did so based on claims that were not covered by this action, and he subsequently withdrew his

objection on August 31.  ECF No. 168 at 11; see also ECF Nos. 166, 167.

Accordingly, the Court concludes this factor weighs in favor of a settlement.  See e.g.,

McKee Foods Corp., 716 F. Supp. 2d at 852 (finding that 4.86% opt-out rate strongly supported

approval); Churchill Village LLC v. Gen. Elec., 361 F.3d 566, 577 (9th Cir. 2004) (holding that

approval of a settlement that received 45 objections (.05%) and 500 opt-outs (.56%) out of 90,000

class members was proper).

Balancing these factors, the Court finds the settlement fair and reasonable.

## III.    ATTORNEYS' FEES

### A.    Legal Standard

"Where a settlement produces a common fund for the benefit of the entire class, courts

have discretion to employ either the lodestar method or the percentage-of-recovery method."  In re

Bluetooth, 654 F.3d at 942; see Lealao v. Beneficial California, Inc., 82 Cal. App. 4th 19, 27

(2000) ("Despite its primacy, the lodestar method is not necessarily utilized in common fund

cases.").  "The lodestar figure is calculated by multiplying the number of hours the prevailing

party reasonably expended on the litigation (as supported by adequate documentation) by a

reasonable hourly rate for the region and for the experience of the lawyer."  In re Bluetooth, 654

F.3d at 941.  "Because the benefit to the class is easily quantified in common-fund settlements,"

courts can "award attorneys a percentage of the common fund in lieu of the often more time-

consuming task of calculating the lodestar."  Id. at 942.

"[E]ven though a district court has discretion to choose how it calculates fees . . . it abuses

that discretion when it uses a mechanical or formulaic approach that results in an unreasonable

reward."  In re Bluetooth, 654 F.3d at 944 (internal quotation marks omitted).  Thus, the Ninth

Circuit has "encouraged courts to guard against an unreasonable result by cross-checking their

calculations against a second method."  Id.; see also In re Sutter Health Uninsured Pricing Cases,

171 Cal. App. 4th 495, 512 (2009) (affirming attorneys' fee award calculated as a percentage-of-

recovery with a lodestar cross-check).

**B.**     **Analysis**

When using a percentage-of-recovery method, "courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." In re Bluetooth, 654 F.3d at 942 (citations omitted).  When considering whether to depart from the 25% benchmark, courts consider a number of factors, including whether class counsel "'achieved exceptional results for the class,' whether the case was risky for class counsel, whether counsel's performance 'generated benefits beyond the cash settlement fund,' the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis." In r Online DVD-Rental Antitrust Litig., 779 F.3d 934, 954-55 (9th Cir. 2015) (quoting Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047–50 (9th Cir. 2002)).  "[T]he most critical factor [in determining appropriate attorneys' fee awards] is the degree of success obtained." Hensley v. Eckerhart, 461 U.S. 424, 436 (1983).

Here, Plaintiff has requested $730,000 in attorneys' fees or approximately 28.6% of the total settlement fund of $2.55 million.  ECF No. 169 at 3.  The Court declines to award attorneys' fees beyond the 25% benchmark.  Although the Court is cognizant that "[s]election of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case," Vizcaino, 290 F.3d at 1048, Plaintiff's motion contains no explanation of the factors described above or any other "special circumstances" that might have justified departing upward from the benchmark.[3]  In re Bluetooth, 654 F.3d at 942.  It is difficult for the Court to marshal the reasons for a departure from the benchmark if Plaintiff's counsel do not supply them.

The Court has also evaluated the requested fee award against Plaintiff's claimed lodestar. "[A] court may cross-check its percentage-of-recovery figure against a lodestar calculation," In re

---

[3] In addition to this lack of analysis, Plaintiff's motion includes several paragraphs that appear to relate to another entirely different case that is not before this Court.  ECF No. 169 at 7-8.

United States District Court
Northern District of California

1    Online DVD-Rental Antitrust Litig., 779 F.3d 934, 955 (9th Cir. 2015), but is not required to do

2    so.  Yamada v. Nobel Biocare Holding AG, 825 F.3d 536, 547 (9th Cir. 2016).  "Calculation of

3    the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on

4    the reasonableness of the percentage award." Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1050

5    (9th Cir. 2002).  Regardless of whether the court performs a lodestar cross-check, the percentage

6    method of recovery remains "the primary basis of the fee award."  Id.

7         Here, Plaintiff claims a lodestar of $981,500.  That figure contains time expended by

8    attorney Eduardo Roy, billed at $900 per hour, on tasks that either could have been performed by a

9    more junior (and less costly) lawyer, taken less time, or both.  For example, Mr. Roy billed 25.7

10   hours researching and drafting the complaint in October and November 2013.  While the Court

11   would expect Mr. Roy to review and edit the complaint before filing, basic research and drafting

12   tasks should have been left to a more junior lawyer.  Thus, while it is true that the fees requested

13   are lower than Plaintiff's lodestar fee, that fact alone does not justify a 28% fee award where the

14   lodestar itself is somewhat overstated.

15        Therefore, the Court concludes that Plaintiff is entitled to $637,500 in attorneys' fees, or

16   25% of the total settlement fund.

17   **IV.    COSTS**

18        **A.    Legal Standard**

19        An attorney is entitled to "recover as part of the award of attorney's fees those out-of-

20   pocket expenses that would normally be charged to a fee paying client."  Harris v. Marhoefer, 24

21   F.3d 16, 19 (9th Cir. 1994) (citation omitted).  To support an expense award, Plaintiff should file

22   an itemized list of his expenses by category and the total amount advanced for each category,

23   allowing the Court to assess whether the expenses are reasonable.  Wren v. RGIS Inventory

24   Specialists, No. C-06-05778 JCS, 2011 WL 1230826, at *30 (N.D. Cal. Apr. 1, 2011),

25   supplemented, No. C-06-05778 JCS, 2011 WL 1838562 (N.D. Cal. May 13, 2011).

26        **B.    Analysis**

27        Plaintiff has requested a total amount of $252,187.39 in costs, which is less than the

28   estimated costs of $295,000 submitted in the preliminary approval motion.  ECF No. 169 at 3; see

United States District Court
Northern District of California

12

1    also ECF No. 156 at 11.  Plaintiff has submitted an invoice of costs as an exhibit to their motion,

2    which indicates that the vast majority of the costs – $195,067.34 or approximately 77% – were

3    incurred by the settlement administrator.  ECF No. 169-2 at 3.  The remaining costs were

4    associated with discovery, mediation, and filing fees.  Id.  The Court concludes these fees are

5    reasonable, and therefore holds that counsel are entitled to $252,187.39 in litigation costs.

6    **V.     PLAINTIFF'S INCENTIVE AWARD**

7         **A.     Legal Standard**

8         "[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs,

9    are eligible for reasonable incentive payments."  Staton, 327 F.3d at 977.  "Incentive awards are

10   discretionary . . . and are intended to compensate class representatives for work done on behalf of

11   the class, to make up for financial or reputational risk undertaken in bringing the action, and,

12   sometimes, to recognize their willingness to act as a private attorney general."  Rodriguez, 563

13   F.3d at 958–59 (internal citation omitted).  Courts evaluate incentive awards individually, "using

14   relevant factors including the actions the plaintiff has taken to protect the interests of the class, the

15   degree to which the class has benefitted from those actions, the amount of time and effort the

16   plaintiff expended in pursuing the litigation and reasonable fears of workplace retaliation."

17   Staton, 327 F.3d at 977 (citation and internal quotations and alterations omitted).  Indeed, "courts

18   must be vigilant in scrutinizing all incentive awards to determine whether they destroy the

19   adequacy of the class representatives."  Radcliffe v. Experian Info. Solutions, Inc., 715 F.3d 1157,

20   1164 (9th Cir. 2013).

21        **B.     Analysis**

22        Here, Plaintiff Michael Deatrick has requested a service award of $5,000.  ECF No. 169 at

23   3.  In this circuit, a service award of $5,000 is presumptively reasonable.  See Harris v. Vector

24   Marketing Corp., No. C-08-5198 EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012).

25   Nonetheless, the Court will not award Mr. Deatrick $5,000 for several reasons.

26        First, Plaintiff's motion offers no details regarding "the actions the plaintiff has taken to

27   protect the interests of the class."  Staton, 327 F.3d at 977.  The motion states only that "Mr.

28   Deatrick has vigorously represented the Class in this case involving factual complexity, and has

13

actively participated in settlement negotiations." ECF No. 169 at 8.   By contrast, in <u>Covillo v. Specialty's Cafe</u>, which Plaintiff cites, the individuals seeking service awards provided estimates of the total hours they spent on the case and described the activities conducted on behalf of the class. No. C-11-00594 DMR, 2014 WL 954516, at *8 (N.D. Cal. Mar. 6, 2014).

Second, a $5,000 service award is not proportional to the class members' settlement awards. <u>See</u> <u>Smith v. Am. Greetings Corp.</u>, No. 14-CV-02577-JST, 2016 WL 2909429, at *10 (N.D. Cal. May 19, 2016) ("[T]o determine the reasonableness of a requested incentive payment, courts consider the proportionality between the incentive payment and the range of class members' settlement awards."). This Court previewed its reservations regarding proportionality in its order preliminarily approving the settlement:

> The parties have also proposed an incentive award of $12,000 for the named plaintiff Deatrick, which the Court notes is approximately 270 times the size of the stated average award for other class members. The Court is unlikely to approve an incentive award that is so disproportionate to other class members' recovery in the absence of extraordinary circumstances.

ECF No. 155 at 11. Even a $5,000 award is over one hundred times the size of the average award for the class members. This extraordinary ratio weighs against granting Plaintiff's requested service award.

The Court concludes that a $1,500 service award will appropriately compensate Mr. Deatrick for his efforts as sole representative in this case. Though lower than the amount requested, a $1,500 award is still many times greater than the class members' average award.

## CONCLUSION

The Court orders as follows:

1. The Court grants final approval of the proposed settlement.

2. The Court grants Plaintiff's counsel $637,500 in attorneys' fees.

3. The Court grants Plaintiff's counsel $252,187.39 in litigation costs.

/ / /

/ / /

/ / /

14

1        4.  The Court grants a $1,500 incentive award to Plaintiff Michael Deatrick.

2        IT IS SO ORDERED.

3    Dated: September 23, 2016

4                                                    _____
                                                          JON S. TIGAR
5                                                      United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California